UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH GONZALEZ, <br><br> Plaintiff, <br><br> v. <br><br> JANET DHILLON, CHAIR; UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION <br><br> Defendants. | Civil Action No. 1:20-cv-02111 <br><br> Judge Matthew F. Kennelly |

## FIRST AMENDED COMPLAINT

Plaintiff Elizabeth Gonzalez files this First Amended Complaint against the Defendants Janet Dhillon ("Dhillon"), Chair, and United States Equal Employment Opportunity Commission ("EEOC").

## JURISDICTION AND VENUE

1. This action seeks equitable relief and damages from Defendants for their discrimination in federal employment against Plaintiff on the bases of disability, national origin, sex, and retaliation.

2. Jurisdiction exists under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1988, and 29 U.S.C. § 791.

3. Venue is proper because the discriminatory acts occurred within this judicial district under 42 U.S.C. 2000e-5(f)(3).

## PARTIES

4. Plaintiff Elizabeth Gonzalez is a citizen of the United States who was employed by the United States Equal Employment Opportunity Commission's Illinois District Office in Chicago, Illinois.

5. Defendant United States Equal Employment Opportunity Commission is the agency of the United States charged with the administration, interpretation, and enforcement of Title VII.

6. Defendant Janet Dhillon, Chair, United States Equal Employment Opportunity Commission, is charged with the administration and enforcement of all laws, rules, and regulations relating to the equal employment opportunity of officers and employees under the jurisdiction of the United States Equal Employment Opportunity Commission.

## PRIOR ADMINISTRATIVE PROCEEDINGS

7. Plaintiff exhausted all pre-complaint administrative procedures under the rules and regulations of the EEOC.[1]

8. Plaintiff filed this action within 90 calendar days following receipt of each of the below Final Agency Decisions.

### First EEO Complaint

9. On November 18, 2015, Plaintiff initiated counseling alleging that she was discriminated against on the bases of disability, national origin, sex, and reprisal when she was denied accommodation.

10. On January 12, 2016, Plaintiff filed her First EEO Complaint (No. 2016-0014).

11. On December 5, 2017, the Agency issued its Notice of Dismissal.

12. On December 22, 2017, Plaintiff filed an appeal with the Office of Federal Operations (OFO).

---

[1] In Plaintiff's EEOC proceedings, the EEOC was both the respondent agency and the adjudicatory authority. The EEOC's adjudicatory function is housed in an office that is allegedly separate and independent of those offices charged with in-house processing and resolution of discrimination complaints. For ease of reference in this complaint, EEOC refers to the adjudicatory authority and Agency refers to the respondent party to the EEOC proceedings.

2

13. On November 27, 2019, OFO vacated the Agency's decision and remanded the matter for further processing.

14. On January 11, 2020, Plaintiff requested a hearing with an Administrative Judge, which she withdrew on March 27, 2020, because of health reasons.

15. On August 3, 2020, the EEOC issued a Final Agency Decision on the First EEO Complaint.

16. On August 21, 2020, Plaintiff received the Final Agency Decision on the First EEO Complaint.

## Second EEO Complaint

17. On November 16, 2018, Plaintiff contacted an EEO counselor, alleging unlawful retaliation.

18. On February 2, 2019, filed her Second EEO Complaint (No. 2019-0012).

19. On May 6, 2019, the Agency issued its Notice of Dismissal.

20. On May 9, 2019, Plaintiff filed an appeal from the Agency's decision.

21. On December 27, 2019, the EEOC issued a Final Agency Decision on the Second EEO Complaint.

22. On January 10, 2020, Plaintiff received the Final Agency Decision on the First Second EEO Complaint.

## FACTS

23. Plaintiff began working with the Agency as an Information Intake Representative (IRR) at its Chicago District Office on December 1, 2014.

24. Plaintiff had to serve a one-year probationary period, which was set to end on December 1, 2015.

25. Plaintiff received and responded to telephone calls from individuals and/or their representatives seeking information on employment discrimination, the laws enforced by EEOC, and the charge filing process; determined whether EEOC or some other organization had jurisdiction; conducted pre-charge counseling and sent out intake questionnaires to the potential charging parties; and entered information into designated databases.

26. Plaintiff had a medical event at work and went to the emergency room at Holy Cross Hospital because of her medical condition on February 3, 2015.

27. Plaintiff notified her first-line supervisor, Tyrone Irvin, and informed him that she was at the hospital with the medical condition on February 4, 2015.

28. Throughout Plaintiff's employment with the Agency, she continued to keep the Agency informed on her medical condition and took sick leave.

29. Plaintiff spoke with Mr. Irvin about her medical condition and requested reasonable accommodation because of her medical condition on June 1, 2015.

30. On this date and later discussions, Mr. Irvin told Plaintiff that she could continue to have leave without pay.

31. Plaintiff had a medical event at work and went to the emergency room at Rush University Medical Center on November 5, 2015.

32. On November 17, 2015, Patricia Jaramillo, an EEOC Enforcement Manager, spoke to Plaintiff about the November 5 medical event and Plaintiff's medical condition. Plaintiff requested reasonable accommodation, including the ability to telework. Ms. Jaramillo denied Plaintiff's request.

33. On November 18, 2015, Plaintiff was unable to come into work due to her medical condition and called in to take leave without pay.

34. On November 18, 2015, Plaintiff called an EEO Counselor, Sandra Adams, to file an informal complaint of discrimination based on her national origin (Mexican), sex (female), and disability (major depressive disorder, suicidal ideation, depression, anxiety disorder, vertigo, and migrainosus), and the denial of reasonable accommodation. Ms. Adams scheduled a phone interview for November 23, 2015.

35. On November 20, 2015, Plaintiff emailed Patrick DeWolf, an EEOC Information Intake Program Manager, about her meeting with Ms. Jaramillo about Plaintiff's disability and reasonable accommodation. Mr. DeWolf did not respond.

36. On November 20, 2015, Plaintiff met with union steward, Kimberly Engram, and union representative, Jose Romo. Plaintiff told them of her discrimination complaint.

37. On November 20, 2015, Plaintiff was called into a meeting by Ms. Jaramillo and Mr. Irvin. Plaintiff requested that her union representative, Ms. Engram, be present. Ms. Engram requested reasonable accommodation again on behalf of Plaintiff. Ms. Jaramillo stated the Agency had not decided whether they would retain Plaintiff beyond the probationary period, but Plaintiff could make a reasonable accommodation in writing and contact the ADA Coordinator. Plaintiff immediately contacted Rodney Yelder, Disability Program Manager, and emailed him a confirmation of reasonable accommodation.

38. On that same day, Ms. Engram told Plaintiff that Ms. Jaramillo had decided to demote Plaintiff to part-time rather than to terminate her. Plaintiff agreed since the Agency had denied her reasonable accommodation. Ms. Engram told Plaintiff that the management would retaliate against her if she filed an informal EEO complaint. As a result, Plaintiff emailed Ms. Adams to hold off on her complaint.

39. On November 25, 2015, the Agency informed Plaintiff that it would not retain her and that she would be terminated effective November 30, 2015. Plaintiff immediately resigned.

40. From the start of her employment on December 1, 2014 through November 25, 2015, Plaintiff performed at a satisfactory level.

41. Plaintiff had no disciplinary records for her entire employment with the Agency.

42. Plaintiff was not given a warning nor counseled at any time by the Agency.

43. On November 27, 2015, Plaintiff contacted Ms. Adams to proceed with her complaint.

44. During Plaintiff's employment with the Agency, management provided reasonable accommodation to non-Mexican IRRs who started at the same time as Plaintiff. The Agency also hired other non-Mexican IRR as full-time teleworkers.

45. After her resignation, Plaintiff discovered that the Agency had included her on Standard Form 50 (SF-50), issued on January 5, 2016, the reasons Complainant had given for her resignation. Plaintiff characterized this information as "sensitive and personal"; it referenced her disability, the Agency's alleged failure to provide her with reasonable accommodation, her view that she had been constructively discharged, and her intention to file a complaint against the Agency. Plaintiff contacted the Agency on several occasions to obtain a revised SF-50 omitting this information. Plaintiff emailed the Agency in July 2017. When she received no response. Plaintiff submitted additional emails and letters to the Agency in November 2017.

46. After her resignation, Plaintiff sought employment with the United States Customs and Border Protection (CBP) under the Department of Homeland Security. The CBP gave Plaintiff a conditional offer of employment pending a background investigation. As part of the background investigation, the CBP contacted the Agency. After her background

investigation, the CBP rescinded Plaintiff's job offer. On information and belief, an Agency official provided information that harmed Plaintiff's ability to secure employment with the CBP.

## COUNT I
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Disparate Treatment Based on National Origin and Sex

47. Plaintiff incorporates Paragraphs 1 through 46.

48. Title VII prohibits an employer from discriminating against any individual in, among other things, compensation, terms, conditions, or privileges of employment, because of such individual's race and national origin. 42 U.S.C. § 2000e-2(a)(1).

49. Plaintiff is a member of protected classes (national origin and female) under Title VII.

50. Plaintiff was subject to adverse employment actions based on national origin and sex when she was denied reasonable accommodation.

51. Similarly situated EEOC employees outside the protected class were not subject to such adverse terms and conditions of employment.

52. Defendants' denial of reasonable accommodations resulted in constructive termination of Plaintiff.

53. Plaintiff has been subject to disparate treatment because of disability/national origin/sex and has been damaged on a continuing basis.

54. Defendants' acts and omissions constitute an intentional and "continuing violation" under Title VII.

## COUNT II
### Violation of The Rehabilitation Act of 1973. as amended at 29 U.S.C. § 791 et seq., Failure to Accommodate Disability

55. Plaintiff incorporates Paragraphs 1 through 54.

56. The Rehabilitation Act prohibits a federal agency from discriminating against an otherwise qualified individual with a disability solely by reason of her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination § 501(g) of the Rehabilitation Act, (29 U.S.C. 791(g)).

57. The Rehabilitation Act expressly incorporates the liability standards set out in the ADA. *See id*. § 794(d); 29 C.F.R. § 1614.203(b).

58. Plaintiff is an individual with disability, as defined under the ADA.

59. Plaintiff has a record of her disability and impairments, and her employer and supervisors knew of her disabilities.

60. Defendants violated § 501 of the Rehabilitation Act, as amended and under the applicable standards of the ADA as amended 42 U.S.C. § 12112(b); and 29 C.F.R. Part 1630, when they forced her to take part-time employment while seeking treatment for her disability.

**COUNT III**
**Violation of The Rehabilitation Act of 1973 as amended at 29 U.S.C. § 791 et seq.,**
**Failure to Accommodate Disability**

61. Plaintiff incorporates Paragraphs 1 through 60.

62. Defendants' actions against Plaintiff, when viewed in the totality of the circumstances, as highlighted in this First Amended Complaint, constitute discrimination and failure to accommodate against a qualified disabled individual.

63. Defendants did not want to accommodate Plaintiff's disability and failed to accommodate her disability intentionally and recklessly.

64. Rather than accommodate Plaintiff, Defendants constructively terminated Plaintiff.

65. Plaintiff has been damaged as a result of Defendants' acts and omissions.

## COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000E-3
### (Anti-Retaliation Provisions)

66. Plaintiff incorporates Paragraphs 1 through 65.

67. Management officials responsible for the denial of Plaintiff's reasonable accommodation and continued employment were, in fact, aware of Plaintiff's prior protected EEO activities.

68. Similarly situated employees in the EEOC who have not engaged in protected EEO activities have been treated more favorably related to reasonable accommodation and continued employment.

69. Defendants interfered with Plaintiff's employment with other governmental entities, namely CBP.

70. Defendants' acts and omissions constitute a continuing violation of the anti-retaliation provisions of Title VII 42 U.S.C. 2000E-3.

71. Plaintiff has been damaged as a result of Defendants' acts and omissions.

## REQUEST FOR RELIEF

72. For these reasons, Plaintiff respectfully requests that the Court grant the following relief in her favor and against Defendants:

    A. adjudge and decree that the acts and omissions of Defendants constitute a continuing violation of Title VII of the Civil Rights Act of 1964, as amended, based on disability, national origin, sex, and retaliation;

    B. order Defendants to compensate Plaintiff for her damages;

    C. award costs, expenses, and attorneys' fees; and

    D. grant such other and further relief as the Court finds just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all the claims so triable.

| | |
|---|---|
| Dated: December 1, 2020 | Respectfully submitted, |
| | */s/ Brian O. Watson* <br> Brian O. Watson <br> Matthew E. Lee (application pro hac vice to be filed) <br> RILEY SAFER HOLMES & CANCILA LLP <br> 70 W. Madison Street, Suite 2900 <br> Chicago, Illinois 60602 <br> (312) 471-8700 <br> bwatson@rshc-law.com <br> mlee@rshc-law.com <br> *Attorneys for Elizabeth Gonzalez* |

## **CERTIFICATE OF SERVICE**

The undersigned certifies on December 1, 2020, these papers were filed with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the CM/ECF system, which will serve all counsel of record.

. Dated: December 1, 2020          Respectfully submitted,

*/s/ Brian O. Watson*
Brian O. Watson
Matthew E. Lee (application pro hac vice to be filed)
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700
bwatson@rshc-law.com
mlee@rshc-law.com
*Attorneys for Elizabeth Gonzalez*