UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELIZABETH GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 20 C 2111 |
| ) | |
| CHARLOTTE A. BURROWS, Chair of the ) | Judge Kennelly |
| U.S. Equal Employment Opportunity ) | |
| Commission,[1] ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO COMPEL
<u>PRODUCTION OF PLAINTIFF'S UNREDACTED MEDICAL RECORDS</u>**

Defendant Charlotte A. Burrows, Chair of the U.S. Equal Employment Opportunity Commission, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, moves to compel plaintiff Elizabeth Gonzalez to provide unredacted versions of her medical records in this disability discrimination case during the relevant time period. In support of its motion, defendant states as follows:

1.  This employment discrimination case alleges that plaintiff Elizabeth Gonzalez, a former probationary employee of the EEOC, was constructively terminated due to disability discrimination. She was employed by the EEOC from December 1, 2014, to November 25, 2015. Defendant EEOC asserts that she was terminated due to excessive absences in her first year of employment. Gonzalez claims that the EEOC's failure to accommodate her depression, anxiety, vertigo, and migraines was the cause of her termination and not her excessive absenteeism.

---

[1] Current EEOC Chair Charlotte Burrows is automatically substituted for former Chair Janet Dhillon under Fed. R. Civ. P. 25(d).

2. The EEOC moves to compel Gonzalez to produce her medical records during the relevant time period in unredacted form. Gonzalez disclosed four medical entities where she received care and treatment: Friend Family Health Center, Holy Cross Hospital, Rush University Medical Center, and University of Chicago Medical Center. The EEOC attempted to subpoena those records and Gonzalez, after receiving a notice of subpoena, objected and withdrew her consent by letter. Counsel met and conferred and reached an agreement that Gonzalez would subpoena the medical records, redact the records, and then produce to the EEOC. If there were issues with the redactions, the parties would attempt to reach an agreement and, if unable to, seek court involvement, as described in the parties' joint motion, Dkt. 53. Unfortunately, the parties were unable to reach an agreement on the majority of the redacted records, and thus, the EEOC seeks a court ruling on this discovery issue. Please see the chart below which specifies the Bates numbers and total pages of medical records that have been redacted for each medical entity.

| MEDICAL PROVIDER | BATES NUMBER RANGE | TOTAL PAGES REDACTED |
|---|---|---|
| Friend Family Health Center | GONZALEZ-FRIENDFAMILYHEALTH-00010 to 000245 | 236 Pages |
| Holy Cross Hospital | GONZALEZ-HOLYCROSS-000786 | 105 Pages |
| | GONZALEZ-HOLYCROSS-000788 to 000803 | |
| | GONZALEZ-HOLYCROSS-000807 to 000810 | |
| | GONZALEZ-HOLYCROSS-000812 to 000849 | |
| | GONZALEZ-HOLYCROSS- 000852 to 000864 | |
| | GONZALEZ-HOLYCROSS-000866 to 000867 | |
| | GONZALEZ- HOLYCROSS-000871 to 000895 | |

| Rush University Medical Center | GONZALEZ-RUSH-000246 to 000443 | 247 Pages |
|---|---|---|
| | GONZALEZ-RUSH-000528 to 000545 | |
| | GONZALEZ-RUSH-000587 to 000592 | |
| | GONZALEZ-RUSH-000593 to 000617 | |
| University of Chicago Medical Center | GONZALEZ-UCMC-000639 to 000643 | 31 Pages |
| | GONZALEZ-UCMC-000645 to 000664 | |
| | GONZALEZ-UCMC-000671 to 000776 | |

3. Rule 26 outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of admissibility. Fed. R. Civ. P. 26(b)(1). Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. The scope of permissible discovery is broad. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Gonzalez's medical records are certainly relevant here because whether she was a qualified individual with a disability is a key element of her claim. Gonzalez must show that she had "a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 705(20)(B)(i). Gonzalez's medical history is directly relevant to her allegations that her alleged disabilities—depression, anxiety, vertigo, and migraines—were the cause of her termination and not her excessive absenteeism. Courts in this district have compelled the

3

disclosure of medical records in disability discrimination suits, even going further and compelling the production of medical records that were not the plaintiff's. *See, e.g.*, *Romano v. City of Hammond Police Dep't*, No. 06 CV 342, 2010 WL 11583127, at *5 (N.D. Ind. Aug. 5, 2010). It is important to note that information within the scope of discovery under Rule 26 "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

4. Courts also require the production of medical records in cases where the plaintiff's medical condition is relevant to her claims of emotional distress. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (defendant would be entitled to a Rule 35 exam of plaintiff seeking emotional distress damages allegedly resulting from workplace harassment); *Owens v. Sprint/United Management Co.*, 221 F.R.D. 657, 660 (D. Kan. 2004) (finding that records relating to plaintiff's medical care, treatment, and counseling were relevant to claim for emotional damages under Title VII as well as to defenses against claim because the records could reveal unrelated stressors that could have affected her emotional well-being); *Fitzgerald v. Cassil*, 216 F.R.D. 632, 634 (N.D. Cal. 2003) (finding that medical records involving mental health, including physical conditions tied to mental health, were relevant); *Payne v. City of Philadelphia*, 2004 WL 1012489 (E.D. Pa. 2004) (finding that mental health records were relevant because they might suggest whether plaintiff's mental injuries were due to circumstances prior to or as a result of incident at issue, or whether he suffered injuries at all, and interests of adequate and fair discovery favored discovery); *Garrett v. Sprint PCS*, 2002 WL 181364 (D. Kan. 2002) (finding that plaintiff's intent not to present expert testimony in support of her emotional distress claim did not make medical records and information any less relevant); *LeFave v. Symbios, Inc.*, 2000 WL 1644154 (D. Colo. 2000) (finding that medical records were relevant to claim for emotional distress damages and to

defense against claim because they could reveal unrelated stressors); *see also Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005) (collecting cases).

5. Here, Gonzalez's medical records are relevant because this is a disability discrimination and failure-to-accommodate case, and therefore plaintiff has put her medical condition directly at issue. Defendant is entitled to plaintiff's unredacted medical records to understand her medical condition at the time of her employment and just prior to her employment because whether she was disabled and whether there was an available reasonable accommodation is a key element of her claims. Defendant is also entitled to plaintiff's unredacted medical records to understand her medical condition at least shortly after her termination for damages purposes. In addition, outside of the issue of whether Gonzalez was an individual with a disability, there is an issue of whether there was *any* possible reasonable accommodation available that would have allowed her to resolve her serious attendance issues at work.

6. These unredacted medical records are needed for expert discovery. If the court denies the EEOC's motion for summary judgment (due to be filed on April 22, 2022), and the parties proceed to expert discovery, the EEOC intends to retain experts to review the medical records and provide their expertise on these issues. We can hardly be expected to ask an expert to opine given the heavily redacted version of the medical records currently provided. This would prejudice the EEOC's ability to present necessary expert testimony on relevant issues at trial.

7. Currently, many of Gonzalez's medical records are so redacted as to be unusable, and it is impossible for EEOC to determine even what medical specialty was involved with

Gonzalez's treatment at many of these medical visits. Examples of the redactions are included in Exhibit A.[2] To illustrate a few specific examples:

a. Medical records from Holy Cross Hospital dated February 4, 2015, indicate that Gonzalez was at the hospital for a "behavioral emergency/suicidal" but again, almost the entire record is redacted including all comments under the following headings: Initial comments, ROS [review of systems] and Patient History, Medication and Physical Exam, Clinical Data and ED Course, Disposition/Patient Discussion. Not only did this medical record occur *during* Gonzalez's employment with the EEOC, this medical event is directly mentioned in her amended complaint and relates directly to her allegations of disability, specifically depression. 2d Am. Compl. ¶¶ 25-26, Dkt. 40 ("Plaintiff had a medical event at work and went to the emergency room at Holy Cross Hospital because of her medical condition on February 3, 2015. Plaintiff notified her first-line supervisor, Tyrone Irvin, and informed him that she was at the hospital with the medical condition on February 4, 2015."). Ex. A at 13-15.

b. Medical records from Friend Family Health Center dated May 22, 2014 (Gonzalez-FamilyFriendHealth 44-45) are so heavily redacted that it is unclear what the visit even involved. This doctor's visit occurred about six months before Gonzalez began working at the EEOC, and it would be relevant in understanding her medical condition at the time she began working for the EEOC. Ex. A at 1-2.

c. Another set of medical records from the Friend Family Health Center (Gonzalez-FamilyFriendHealth 189-196) are so redacted that it is unclear whether these records are

---

[2] Exhibit A will be filed under seal in an abundance of caution but given that many of the pages are almost completely redacted, it is likely unnecessary.

from an office visit that occurred during her employment at the EEOC because even the date of the visit and the name of the physician who signed the medical records are redacted. Ex. A at 3-11.

d. Medical records from Holy Cross Hospital (Gonzalez-HolyCross 799, 814, 817-18) indicate the Division of Cardiology but most of the records do not indicate what date the record is from or the name of the physician. Ex. A at 12, 16-17.

e. The specified medical records from Rush University Medical Center (Gonzalez-Rush 246-251) are entirely redacted except the heading which does not even indicate the date of the office visit, the treating physician, or what the visit concerned. Ex. A at 18-23.

f. The specified medical records from the University of Chicago (Gonzalez-UCMC 639-43) are so heavily redacted that it is unclear: (1) what date these records are from, (2) who the treating physician was, and/or (3) what the visit or procedure concerned. Ex. A at 24-28.

The almost-complete redactions of Gonzalez's medical records in her disability discrimination case make it impossible for the EEOC to discover and fully understand Gonzalaez's medical condition during the relevant time period. It also does not allow the EEOC to discover inconsistencies in Gonzalez's statements about her medical condition, if any. Because Gonzalez has put her medical condition at issue in this case, the EEOC is entitled to the unredacted medical records for all records that occurred at least up to three years prior to her starting her employment at the EEOC and to the unredacted medical records for at least two years after her termination (and longer if she is asserting that emotional damages related to her termination persisted for longer than two years after the event). Thus, the EEOC moves to compel Gonzalez to provide unredacted copies of her medical records during the most relevant time period, specifically from December 1, 2011, to November 25, 2017 (and even longer if she is asserting continued emotional damages).

8. Granting this motion will not delay the proceedings of this case. The EEOC does not need these records for its motion for summary judgment (due on April 22, 2022), and thus the court ruling on this issue and, if applicable, the subsequent production will not delay summary judgment briefing.

9. Fact discovery was currently set to close on Tuesday, February 21, 2022. The undersigned and plaintiff's counsel met and conferred by video conference on several discovery issues on Friday, February 18, 2022. Although the parties were able to resolve some discovery disputes, they were not able to come to an agreement on this issue. Consistent with the parties' joint motion, Dkt. 53, and given that the parties are unable to reach agreement, the EEOC now seeks court resolution.

10. The parties have both consented to a referral to the magistrate judge for this and other discovery issues, if the court would prefer to refer this matter.

WHEREFORE, defendant EEOC moves to compel plaintiff Elizabeth Gonzalez to provide unredacted copies of her medical records during the relevant time period in this disability discrimination case.

    Respectfully submitted,

    JOHN R. LAUSCH, Jr.
    United States Attorney

    By:   s/ Valerie R. Raedy
          VALERIE R. RAEDY
          Assistant United States Attorney
          219 South Dearborn Street
          Chicago, Illinois 60604
          (312) 353-8694
          valerie.raedy@usdoj.gov

# Exhibit A

Redacted