UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 C 2111 |
| | ) | |
| CHARLOTTE A. BURROWS, Chair of the U.S. Equal Employment Opportunity Commission,[1] | ) ) ) | Judge Kennelly |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
THE PRODUCTION OF PLAINTIFF'S UNREDACTED MEDICAL RECORDS**

**Introduction**

This is a disability discrimination and failure-to-accommodate case where the plaintiff, Elizabeth Gonzalez, refuses to produce her unredacted medical records from shortly before, during, and after the relevant time period (her employment at the EEOC), even with confidentiality provisions in place. The EEOC agrees with Gonzalez that there are highly personal issues involved that merit strong confidentiality protections but disagrees that those issues should bar the production of unprivileged, relevant medical information in a disability discrimination case. Gonzalez has produced only the records that she thinks support her view of her disabilities and not the full scope of medical records that are relevant to her medical condition during the relevant time period. The EEOC should not be forced to rely on Gonzalez and her attorney to cherry-pick and screen which medical records *they* think are relevant to the *EEOC*'s defenses. The court should compel the production of the unredacted medical records.

---

[1] Current EEOC Chair Charlotte Burrows is automatically substituted for former Chair Janet Dhillon under Fed. R. Civ. P. 25(d).

**Relevant Background**

Elizabeth Gonzalez was employed by the EEOC as a probationary employee from for just under a year from December 1, 2014, to November 25, 2015. She was hired as an "information intake representative" whose primary responsibility was to answer phones and respond to questions from the public about the EEO process and filing EEO claims. Within that year, from April to November alone, Gonzalez had used 92 hours of annual leave, 91.45 hours of sick leave, and 241 hours of leave without pay (in other words, over 30 days of unpaid leave plus about 23 days of sick and annual leave). She was counseled several times during her employment about her excessive absenteeism but did not improve her attendance. When the issue of her attendance was addressed by her supervisor, Gonzalez stated that her absenteeism was caused by a domestic violence situation, and she was directed to the Employee Assistance Program, the ADA coordinator, and the City of Chicago's resources via 311, according to her supervisor's testimony. Gonzalez's attendance issues did not improve, and at the end of her probationary year, the EEOC terminated Gonzalez due to her excessive absences. Gonzalez now claims that the termination was due to her depression, anxiety, vertigo, and migraines.

Given Gonzalez's allegations of disability, the EEOC sought her medical records through a third-party medical records service. Gonzalez objected to the subpoena and withdrew her consent. The parties met and conferred and agreed to proceed with Gonzalez retrieving all of her medical records and producing them in redacted format to the EEOC so the parties could hopefully work through any disputes without court intervention. The undersigned expected small portions of the records to be redacted (for example, specific phrases)—unfortunately, large portions were redacted as described in the EEOC's opening motion. Contrary to Gonzalez's assertions in her response brief about the EEOC taking advantage of an agreement, Dkt. 68 at 4-5, the EEOC never

agreed that it would not dispute whether the redactions were appropriate; the agreement was for Gonzalez to redact the medical records in order for the EEOC to view them and determine *whether* it objected to the redactions and to provide the parties the opportunity to work through the objections and seek court intervention only if necessary. Dkt. 53 ¶¶ 3-4. Disputes about the redactions were contemplated as stated in the parties' joint motion to serve additional subpoenas. Dkt. 53 ¶ 4 ("The parties will meet and confer to work through any disputes that arise from the redactions and hopefully come to an agreement without necessitating court intervention"). Unfortunately, although the parties attempted to resolve the matter, they were unable to, and now the EEOC seeks court resolution.

**Argument**

Before addressing the merits of the motion, two preliminary matters should be addressed regarding the scope of the materials sought in the EEOC's motion to compel and the EEOC's position on the confidentiality of the unredacted medical records. In regards to scope: Gonzalez incorrectly summarizes the scope of what defendant is requesting. Contrary to Gonzalez's assertions, the EEOC is *not* seeking *all* of Gonzalez's medical records. As stated in the EEOC's motion to compel, the EEOC seeks unredacted medical records during the relevant time period: (1) the three years prior to the beginning of Gonzalez's employment (from Dec 1, 2011, to Dec 1, 2014); (2) the year period of Gonzalez's employment with the EEOC (from Dec 1, 2014, to Nov 25, 2015); and (3) at least two years after her employment was terminated (from Nov 25, 2015, to Nov 25, 2017). Dkt. 64 at 7 ("Thus, the EEOC moves to compel Gonzalez to provide unredacted copies of her medical records during the most relevant time period, specifically from December 1, 2011, to November 25, 2017 (and even longer if she is asserting continued emotional damages)."). The EEOC also seeks medical records past 2017 and up until the present if (and only if) Gonzalez

is seeking continued emotional damages from 2017 up until the present. Thus, Gonzalez's statements and assertions that the EEOC is seeking "all of Plaintiff's medical records" are incorrect. Dkt. 68 at 4; *cf.* Dkt. 68 at 1 ("Defendant is not entitled to Ms. Gonzalez's entire medical and personal history . . ."). The EEOC is seeking only medical records that will show Gonzalez's medical condition shortly before, during, and after her employment with the EEOC.

The court might wonder why the EEOC was not able to specify which Bates-stamped pages it was seeking in unredacted form in its motion to compel. The simple fact is that some of the medical records are so heavily redacted that the EEOC cannot determine *when* the medical record was created. The EEOC now attaches Exhibit A which lists the redacted records chronologically, if the date is apparent, and the undated records as well, to delineate the records it is seeking, to the extent it can. Again, the EEOC is seeking only the medical records during the relevant time period defined above.

In regards to terms of production: The EEOC has no objection to treating Gonzalez's medical records as highly confidential and using standard litigation methods to protect confidential material. The EEOC agrees with Gonzalez that information that is highly personal in nature, such as a domestic violence situation, should be treated with the highest level of confidentiality. The EEOC is not seeking to share Gonzalez's medical records publicly but only to review the records so it can appropriately defend this case. As the EEOC has conveyed to plaintiff's counsel, the EEOC is willing to receive the medical records with attorneys-eyes-only protection or any other confidentiality protections the court finds appropriate and to work through a procedural mechanism to allow the parties to confer about what information can be publicly disclosed in filings or at trial. Thus, the EEOC is not seeking to embarrass Gonzalez in a public forum.[2] This

---

[2] The EEOC specifically did not mention Gonzalez's domestic violence situation in its

4

is *not* a dispute between privacy versus publication but rather a dispute between disclosure versus withholding.

I. **Gonzalez's Medical Records during the Relevant Time Period Meet the Standard Set Forth in Rule 26 for Discovery and Should Be Produced.**

Rule 26 of the Federal Rules of Civil Procedure outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any *nonprivileged* matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case," regardless of admissibility. Fed. R. Civ. P. 26(b)(1) (emphasis added). Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The scope of permissible discovery is broad. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Information sought in discovery need not be admissible in evidence to be discoverable. *Id.* Thus, the court should determine: (1) whether a privilege applies; (2) whether the sought discovery is relevant; and (3) whether the sought discovery is proportional. Here, no privilege applies, Gonzalez's medical records are relevant, and the production of unredacted medical records during the relevant time period is proportional,

---

opening motion because of the sensitivity of putting such information in the public domain, notwithstanding the fact that Gonzalez herself has asserted such information in her complaints, *see* original complaint, Dkt. 1 at 48 (reference to informing supervisor of domestic violence situation); Operative second amended complaint, Dkt. 40 ¶ 30 (references to the same). However, in her response brief, Gonzalez raises her domestic violence situation as a reason to withhold her medical records from the EEOC. Her domestic violence situation is not a sword to withhold medical records that plaintiffs in disability discrimination cases typically turn over as part of standard discovery process. This is not to say that there should not be additional protections due to the sensitive personal nature of such concerns, but those additional privacy interest can be addressed through the standard litigation mechanisms for dealing with highly confidential material such as a confidentiality order (the EEOC has offered to enter into one) or an attorneys-eyes-only production.

5

especially when considering the EEOC's willingness to abide by the highest level of confidentiality protection.

### A. Gonzalez Does Not Claim Any Privilege.

No applicable privilege applies here. Gonzalez makes no claim that a privilege applies to bar the production of her medical records, and thus any privilege argument is waived. Thus, if the records are relevant and the discovery proportional, they should be produced with appropriate confidentiality protections.

### B. The Requested Unredacted Medical Records Are Relevant.

Gonzalez's medical records from the time period from Dec 1, 2011, to at least Nov 25, 2017 are relevant (at least in the discovery phase). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. of Evid. 401. To the state the obvious, Gonzalez's medical records will make a fact—her disabilities, the severity of those disabilities, and the extent of her injury or damages—more or less probable.

In its motion to compel, the EEOC described six specific examples of improperly redacted medical records. Gonzalez does not address any of those examples in her response. Most notably, Gonzalez does not even attempt to explain why she has refused to turn over records related to a medical incident on February 4, 2015, that is included *in her complaint*. *See* Ex. A to Opening Motion, Dkt. 64 at 22-24 (filed under seal); 2d Am. Compl., Dkt. 40 ¶ 25 ("Plaintiff had a medical event at work and went to the emergency room at Holy Cross Hospital because of her medical condition on February 3, 2015."). Surely, Gonzalez herself found it relevant to the litigation given that she alleged the facts of the medical incident in her complaint. And yet, Gonzalez has refused to provide these unredacted records to the EEOC, regardless of

their relevance or any offered confidentiality provision. And rather than at least address the issue in her response brief, Gonzalez just ignores that argument and all of the other specific illustrations offered by the EEOC.

More generally, Gonzalez as a plaintiff does not get to pick and choose what medical information she deems relevant. Gonzalez's medical information during the relevant time period is relevant because her medical condition is at issue generally. Not just her diagnosis, but what she was and was not capable of doing and why. The EEOC is entitled to medical information that both supports and undermines her alleged claims—that both shows her medical condition is more severe or less severe. The specific things that could be seen in the redacted medical records include: depression screening results that conflict with Gonzalez's allegations, causal relationships that undermine Gonzalez's allegations, the absence of statements about her medical condition that would support her testimony, indications of less or more severe symptoms, reasons that could have caused her absenteeism other than her alleged disabilities (for example, alcoholism, which there is evidence in the record of), and statements contrary to her current description of her medical condition at the time, among others.

Plaintiff repeatedly states that Gonzalez's disabilities are undisputed. The EEOC will not be contesting Gonzalez's various diagnoses supported by the medical records but the *severity* of Gonzalez's disabilities *is* disputed and directly relates to whether she could perform her job with or without an accommodation, a central issue in this action, and whether she was a qualified individual with a disability. Further, the EEOC intends to consult with experts to review Gonzalez's medical records to opine on the severity of her alleged disabilities—depression, anxiety, vertigo, and migraines—and her ability to work during the relevant time period based on her medical condition. As even lay people intuitively know, there is a huge range in regards to

7

an individual's ability to function depending on the severity of the four alleged disabilities at issue here, from those with migraines that are severe and frequent leading to almost complete impairment, to those that live and work with migraines and are able to do so. The same can be said about depression and anxiety. More importantly, it is not just whether Gonzalez is disabled but whether she was a *qualified* individual with a disability. Gonzalez must show that she had "a physical or mental impairment which *substantially limits* one or more of such person's major life activities," 29 U.S.C. § 705(20)(B)(i)—in other words, she must show not only that she had some medical diagnosis but that her disabilities were severe enough to substantially limit her life activities. The *severity* of Gonzalez's disabilities *is* disputed, as well as whether any accommodation could have been effective, and thus the facts of her medical condition directly impact specific elements of her disability discrimination and failure-to-accommodate case. Thus, the second prong is met—"the fact" (here, her medical condition and the severity of her alleged disabilities) is "of consequence in determining the action." Fed. R. Evid. 401.

Case law supports the EEOC's position. Gonzalez cites to *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2020 WL 12432053, at *1-2 (N.D. Ill. Dec. 16, 2020), but *Weir* supports the EEOC's position. In *Weir*, the plaintiff had already "produced to Defendant *unredacted* versions of her records from her two mental healthcare providers, including *unredacted* therapy session notes, and Plaintiff [did] not raise an objection in her response to Defendant subpoenaing her records directly from any of her healthcare providers, including her mental health providers." *Wier* 2020 WL 12432053, at *2 (emphasis added). In contrast, here, Gonzalez did *not* produce unredacted copies of records from her mental healthcare providers or unredacted therapy session notes; and Gonzalez *did* object to defendant subpoenaing medical records directly from her providers. Furthermore, the order granted in *Weir* provided eight years of medical records to

8

defendant, which is more than the about five years of records that the EEOC is requesting here. The other cases cited by Gonzalez (*Ashley v. Schneider Nat'l Carriers, Inc.*, No. 12-cv-08309, 2014 WL 972154 (N.D. Ill. Mar. 11, 2014), and *Warner v. Velardi*, No. 16-cv-1924, 2017 WL 3387723 (S.D. Cal. Aug. 7, 2017)) are not disability discrimination cases and thus are not helpful. Similarly, *Anderson v. Abercrombie & Fitch Stores, Inc.*, No. 06-cv-991, 2007 WL 1994059, at *4 (S.D. Cal. July 2, 2007), is not helpful because the discrimination case was not based on disability or failure-to-accommodate claims but race and retaliation, and further, the court's reasoning relies on California privilege law not involved here. *Id.* at *4.

Gonzalez argues that the medical records produced should be limited to records related her claimed disabilities. As discussed above, that application of relevancy is far too narrow. But even if the court accepted Gonzalez's argument (it should not), the EEOC is *still* owed additional, unredacted records. Gonzalez has redacted records that are related to Gonzalez's alleged disabilities of depression, anxiety, migraines, and vertigo. For example, medical records from Gonzalez's hospital visit on February 4, 2015, referenced in her complaint, directly relate to depression, and yet were still redacted. *See* Gonzalez-HolyCross 800-02, attached as Exhibit A to Dkt. 64 (filed under seal). Another example: medical records from a Holy Cross visit (Gonzalez-HolyCross 854) list depression, suicidal ideation, and vertigo, as well as alcohol use, and yet large portions of the record from that visit are redacted. *See* Ex. B (filed under seal). Other medical records have the same problem (Gonzalez-UCMC 634 and Gonzalez-FriendFamilyHealth 11) in that they are relevant to Gonzalez's alleged disabilities (both records reference her alleged disabilities) and yet they are still redacted. *Id.* In addition, although some references to Gonzalez's alcohol use disorder have been produced in unredacted form, *see, e.g.*, Gonzalez-RiverEdge 2, alcohol use is not one of Gonzalez's alleged disabilities and thus,

according to Gonzalez's argument, should not have to be produced. *Id.* However, this is obviously relevant because it relates to a possible defense, namely evidence of an alternative cause of Gonzalez's severe absenteeism. The EEOC does not know what other relevant information in the medical records have been redacted, and the EEOC should not have to rely on *plaintiff*'s determination of what is relevant to the *EEOC*'s defense in discovery.

Finally, Gonzalez's objection based on privacy concerns does not change the relevancy analysis. Gonzalez's medical records are relevant because she put her medical condition at issue in this case by asserting that she suffered emotional distress and challenging the EEOC's legitimate reason for her employment termination with the allegation that it was instead based on her medical condition and domestic violence situation. *See Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (noting that plaintiff "cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those claims."); *Patterson v. Chicago Assoc. for Retarded Children*, 1997 WL 323575, *3 (N.D. Ill. 1997) ("ADA plaintiffs . . . waive all privileges and privacy interests related to their claim by virtue of filing the complaint."). Accordingly, Gonzalez's medical records during the specified time period are relevant.

    **C.**     **The Requested Medical Records Are Proportional.**

The medical records are time bound based on Gonzalez's employment history with the EEOC and any alleged issues of privacy and embarrassment can be resolved by a confidentiality order and/or an agreed limitation such as attorneys-eyes-only. Again, the EEOC is not seeking to make Gonzalez's medical information public and would agree to a procedural mechanism for the parties to confer before any information from the medical records was used in a public filing or at trial. However, the EEOC should be able to collect evidence and evaluate for itself Gonzalez's

medical condition in this disability discrimination and failure-to-accommodate case, and should be able to provide a complete set of medical records during the relevant time period to its experts.[3]

### D. The Legitimate Privacy Concerns Gonzalez Raises Should Be Addressed through Confidentiality Provisions, Not Bar Production Entirely.

Gonzalez's legitimate privacy concerns can be adequately addressed through a confidentiality order and/or an attorneys-eyes-only limitation on the production of the unredacted medical records. *See Ill. League of Advocs. for the Developmentally, Disabled v. Ill. Dep't of Hum. Servs.*, No. 13 C 1300, 2013 WL 3287145, at *4 (N.D. Ill. June 28, 2013) (finding that confidentiality order was sufficient to protect confidential nature of medical records and ordering them to be produced in unredacted form). Gonzalez argues that because her medical records contain highly personal information (Gonzalez implies that there are references to her domestic violence situation in her medical records although the EEOC obviously cannot confirm that assertion given the redactions), she should not have to produce the unredacted records at all. However, this argument goes to support higher confidentiality protections, not to bar production. Although the EEOC is happy to abide by a stringent confidentiality order, the EEOC should not be placed at a disadvantage in defending this suit because one of the intertwined issues is of a personal nature to plaintiff. The issue is unfortunately intertwined because when Gonzalez's direct supervisor addressed Gonzalez's serious attendance issues midway through her probationary year, according to her supervisor's testimony, Gonzalez explained that she was absent due to her domestic violence situation. *See also* Complaint, Dkt. 1 at 48 (noting that she informed supervisor

---

[3] The EEOC will be seeking expert discovery if its motion for summary judgment is not granted by the court. Gonzalez's assertions on this front about what discovery *defendant* needs to defend the case is improper. The EEOC requested a summary briefing schedule instead of an expert discovery schedule because if the court grants summary judgment in the EEOC's favor, expert discovery will be unnecessary. If the court would like the EEOC to file an amended status report to indicate its intention to seek expert discovery in this case, the EEOC will do so.

of domestic violence situation when addressing absences); 2d Am. Complaint, Dkt. 40 ¶ 30 (same). This is not a case where there is an ancillary issue of domestic violence and defendant seeks further discovery on that issue even though it is unrelated; this is a case where Gonzalez was terminated for excessive absenteeism and when asked about why she was absent, according to her supervisor, *plaintiff* pointed to her domestic violence situation. Further, although the EEOC is in agreement that this topic deserves the highest level of confidentiality—and as such has offered attorneys-eye-only protection for her medical records—such an allegation cannot be used as a sword to shield all medical records relevant to Gonzalez's overall medical condition from production because they discuss her personal situation, especially where the alleged disabilities, depression and anxiety, are intertwined with her domestic violence situation based on what Gonzalez said to her supervisor during her employment. This is a difficult discovery issue because the EEOC will be the first to admit that information related to domestic abuse is highly personal, but it is also central to the litigation because plaintiff provided it as a *reason* for her excessive absences from work. Thus, the EEOC seeks guidance from the court on balancing these interests.

**II.   The Court Should Disregard Gonzalez's Red Herring Arguments about Unrelated Discovery Issues.**

Gonzalez raises other, unrelated discovery issues that are not relevant to the issue at hand. Gonzalez cannot get around providing relevant, documentary material by arguing about depositions. For example, Gonzalez criticizes the EEOC for withdrawing Dr. Mirkin's subpoena for deposition after the undersigned scheduled the deposition and for subpoenaing family members. These red herrings should be ignored. Ironically though, even if the court considers these ancillary issues, this criticism merely *emphasizes* the EEOC's need for these records. The undersigned withdrew Dr. Mirkin's subpoena for deposition because in the week prior to the deposition when the undersigned attempted to prepare for the deposition, the undersigned could

not find Dr. Mirkin's name anywhere in the unredacted medical records because—assumedly—*all* of Dr. Mirkin's records in the Sinai records were redacted. Gonzalez has, in her response, now admitted that Dr. Mirkin is a relevant treater and yet, *none* of Dr. Mirkin's treatment records were provided in unredacted form. In preparing for the deposition, the undersigned was unable to provide Dr. Mirkin's treatment records to the doctor as requested. Given that many years have passed since such treatment, the undersigned decided the medical records would more accurately define Gonzalez's condition than the doctor's memory—unassisted by records—of Gonzalez's condition over six years ago and chose to withdraw the subpoena. The lack of medical records produced here thus affected the undersigned's ability to prepare for Dr. Mirkin's deposition. If anything, this issue highlights that these records should have been provided to defendant in unredacted format *months* ago.

  Similarly, Gonzalez attempts to criticize the EEOC for serving family member subpoenas, stating that the EEOC sent a subpoena to Gonzalez's abuser. First, the EEOC does not know the identity of the abuser because Gonzalez refused to answer any questions related to this topic at her deposition and thus the EEOC was unable to identify and exclude the abuser and still subpoena other available family members. The parties have met and conferred on this issue and since agreed to stipulate that Gonzalez will not introduce any evidence at trial that the EEOC was not allowed to discover during discovery related to these sensitive issues, which allows Gonzalez to maintain privacy while still allowing the EEOC to avoid any unfair surprise at trial. Second, when sending the family member subpoenas, the undersigned reached out to plaintiff's counsel and specifically stated that she would agree to limit the depositions to focus on personal observations of Gonzalez's disabilities. Suggesting now that the EEOC intended to delve into Gonzalez's domestic violence situation when counsel specifically noted that she would agree to a limitation

13

ahead of time to exclude certain issues is not a fair representation. Further, Gonzalez's counsel at any time could have moved for a protective order or requested certain agreed limitations from the EEOC and yet never did so. Again, these other, unrelated discovery issues are not relevant to this motion.

## Conclusion

For the above stated reasons, the EEOC requests that the court grant its motion to compel the production of Gonzalez's unredacted medical records during the relevant time period with confidentiality provisions.

>Respectfully submitted,
>
>JOHN R. LAUSCH, Jr.
>United States Attorney
>
>By:  s/ Valerie R. Raedy
>VALERIE R. RAEDY
>Assistant United States Attorney
>219 South Dearborn Street
>Chicago, Illinois 60604
>(312) 353-8694
>valerie.raedy@usdoj.gov

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 C 2111 |
| | ) | |
| CHARLOTTE A. BURROWS, Chair of the U.S. Equal Employment Opportunity Commission, | ) ) ) | Judge Kennelly |
| | ) | |
| Defendant. | ) | |

**REDACTED BATES-STAMPED DOCUMENTS PRODUCED BY PLAINTIFF**

All redacted medical records are listed by Bates-stamp. **Bold** indicate the records fall within the relevant time period. *Italics* means the time period is undetermined. Unaltered, regular text indicates medical records that fall outside the EEOC's motion to compel Asterisks (**) indicate that the records are only sought if Gonzalez is seeking emotional damages for that period of time.

| REDACTED BATES RANGE | DATE OF SERVICE |
|---|---|
| | |
| **GONZALEZ – UCMC** | |
| | |
| 671 – 674 | 02.15.08 |
| 774 – 776 | 07.29.08 |
| 633 – 773 | 09.09.08 |
| 630 – 771 | 09.11.08 |
| 628 | 09.17.08 |
| 676 – 769 | 09.23.08 |
| 622 – 624 | 01.06.09 |
| 620 | 03.13.09 |
| **675 – 765** | 05.12.16 |
| *618 – 619* | **Undetermined*** |
| *621* | **Undetermined*** |
| *625* | **Undetermined*** |
| *626 – 627* | **Undetermined*** |
| *629* | **Undetermined*** |
| *637* | **Undetermined*** |
| *644* | **Undetermined*** |
| *660* | **Undetermined*** |

| | |
|---|---|
| *665 – 670* | **Undetermined*** |
| **GONZALEZ-HOLYCROSS** | |
| **782 – 785** | 02.04.15 |
| **786** | 02.04.15 |
| **894** | 02.03.15 |
| **787** | 02.03.15 |
| **788 – 790** | 02.03.15 |
| **791 – 792** | 02.04.15 |
| **793** | 02.03.15 |
| *794 – 795* | **Undetermined*** |
| **796 – 797** | 02.04.15 |
| **798** | 02.04.15 |
| *799* | **Undetermined*** |
| **800 – 803** | 02.04.15 |
| **804 - 839** | 05.13.16 |
| **840** | 06.01.16 |
| **841 – 867** | 07.29.16 |
| **895** | 07.29.16 |
| 868 – 870** | 08.13.20 |
| *871* | **Undetermined*** |
| 872 – 875** | 08.13.20 |
| *876 – 878* | **Undetermined*** |
| 879 – 887** | 08.13.20 |
| 891 – 892** | 08.13.20 |
| 888 – 890** | 08.14.20 |
| **GONZALEZ – RUSH** | |
| **587 – 617** | 07.05.13 |
| **549 – 586** | 08.14.13 |
| **528 – 545** | 09.30.14 |
| **492 – 527** | 11.05.15 |
| **444 – 491** | 05.13.16 |
| 358 – 443** | 07.28.19 |
| 246 - 357** | 10.01.21 |
| **GONZALEZ-FRIENDFAMILYHEALTH** | |
| **008 - 009** | 12.05.11 |
| *177 - 180* | **Undetermined*** |
| **010 - 013** | 02.18.13 |
| **018** | 02.21.13 |

| | |
|---|---|
| **019 - 021** | 07.03.13 |
| **022 - 025** | 01.09.14 |
| **026 - 028** | 01.28.14 |
| **029 - 032** | 02.21.14 |
| **055 - 059** | 07.28.14 |
| **060 - 062** | 08.01.14 |
| **063 - 067** | 08.08.14 |
| **068 - 071** | 10.07.14 |
| **072 - 076** | 11.26.14 |
| **077 – 082** | 03.20.15 |
| **207 – 213** | 03.26.15 |
| **083 – 087** | 06.09.15 |
| **088 – 093** | 09.04.15 |
| **214 – 216** | 09.09.15 |
| **094 – 097** | 11.12.15 |
| **098 – 118** | 02.22.16 |
| **119 – 123** | 11.23.16 |
| **124 – 129** | 11.29.16 |
| **130 – 134** | 03.01.17 |
| **135 – 141** | 07.12.17 |
| **226 – 228** | 07.18.17 |
| **142 – 146** | 10.04.17 |
| 147 – 155** | 10.15.18 |
| 234 – 237** | 10.17.18 |
| 156 – 162** | 10.29.18 |
| 163 – 169** | 04.16.19 |
| 170 – 174** | 06.13.19 |
| *175 – 176* | **Undetermined*** |
| *181 – 206* | **Undetermined*** |
| *217 – 225* | **Undetermined*** |
| *229 – 233* | **Undetermined*** |
| *238 – 241* | **Undetermined*** |
| *242 - 245* | **Undetermined*** |

# Exhibit B

Redacted