# Exhibit H

Affidavit of Tyrone Irvin in the matter of
Elizabeth Gonzalez v. EEOC, EEO Complaint
No. 2016-0014

I, Tyrone Irvin, do solemnly swear and affirm that:

Q: Provide your full name, current position title, and duty station with the EEOC.
A: Tyrone Irvin, Enforcement Supervisor, Chicago District Office

Q: When were you hired by the EEOC?
A: June 2001

Q: How long have you been working in your current position. If you held other positions with the EEOC, provide the position(s) and the period(s) when you held such position(s).
A: 2001 through 2006, Investigator; 2006 through the present Enforcement Supervisor.

Q: What are your duties and responsibilities?
A: Manage a Unit of six investigators, 1 ISA, 1 OAA and 2 to 4 HRs. Oversee the Intake function, process and training.

Q: What is the name and position of your supervisor? Since when he/she has been your supervisor?
A: Patricia Jaramillo, Enforcement Manager since 2007.

Claim #1
*Whether Complainant was subjected to disparate treatment and harassment on the bases of national origin (Mexican), sex (female), disability, and reprisal (prior EEO activity).*

Q: In view of the bases alleged by Complainant, please identify your sex and national origin.
A: Male, American.

Q: Complainant indicates that she is a person with a disability (depression). Were you aware of Complainant's disability prior to this complaint? If so, when and how did you become aware of her disability?
A: No.

Q: According to Complainant, on July 1, 2015 she requested intermittent leave as well as leave without pay as a reasonable accommodation. Complainant stated that you told her not to worry about your leave or current situation since there are laws that would protect her. Did Complainant notify you she needed intermittent leave in or about July 2015?
A: Complainant never discussed with me, her need to take leave other than following the process of notifying her supervisor that she was not going to be present on any

Page 1 of 5                                                                    Affiant's Initials TI

particular day. It was I, her Supervisor, who noticed that she was taking a lot of LWOP. So in July 2015, I spoke to the Director and asked should we be concerned that she Elizabeth was taking so much LWOP. I was unaware of the purpose for the leave, because I would receive texts, requesting a type of leave. I, as a matter of practice, do not ask for the purpose of leave. Our office culture is if you have the time you can take the time. The amount of LWOP drew my concern. The Director instructed me to find out if there was anything going on that we should be aware of, hence the first meeting July 8, 2016, where I had a discussion with Elizabeth about the amount of LWOP she was taking.

Q: Was there an agreement with the Complainant concerning her time and attendance due to her alleged disability? If so, please elaborate.

A: No, in the first meeting July 8, 2015, I expressed to Elizabeth that there was a concern among Management that she was taking so much LWOP. One of the essential functions of the job is to be present for work and she is a probationary employee. During probation is her opportunity to demonstrate that she is the right fit for the job. We never agreed to anything, at that July meeting other than to try and find her help for her personal situation at home.

Q: According to Complainant, on November 5, 2015 she got very sick at work to the point that she had to be taken to the emergency room at the Rush University Medical Center. According to her, EEOC staff members and management did not give her privacy as the fireman asked for her health history. To the best of your knowledge, what happened on that date and how you became aware of Complainant's illness at work?

A: On the date in question, my OAA Earlene Doneley-El notified me that complainant was experiencing a medical issue at her work area. I immediately went to complainant's work area. She was having difficulty breathing and she was a little incoherent from what I recall. When she attempted to stand, she felt dizzy, as she stated. I directed another staff member, cannot recall who, to call for an ambulance and I immediately notified the Enforcement Manager and Director. Within 15 minutes the ambulance arrived. I recall, myself, and my OAA who was originally on scene to assist the complainant were the only EEOC staff present while the fire department attended to the complainant in her work area, an office. The Enforcement Manager stepped away when the Fire Department arrived. I remained to take notes so that I could properly complete a CR-1 report for illness/injury on duty. That report was completed and turned in to the DRM Assistant.

*On November 17, 20 and 25 of 2015, she was denied to work from home as a reasonable accommodation.*

Q: According to Complainant, on November 17, 20 and 25 of 2015, she requested to be allowed to telework on days that she cannot get her depression/vertigo under control and a part-time or modified work schedule as a reasonable accommodation. Were

Elizabeth Gonzalez  2016-0014  00344

Affidavit of Tyron Irvin                                    EEO Complaint No. 2016-0014

| | | |
|---|---|---|
| 89 | | you aware of Complainant's request for telework or modified work schedule? If so, |
| 90 | | please elaborate on when and how you became aware. |
| 91 | A: | I am not aware of complainant requesting to work at home as an |
| 92 | | accommodation. My OAA went to the hospital with the Complainant. I went to |
| 93 | | the hospital to pick up my OAA. Complainant was still there but had not been |
| 94 | | seen as of yet, probably around 6pm. Later that night (maybe 2am or so) |
| 95 | | Complainant notified me via text that she was diagnosed with Vertigo and she |
| 96 | | was leaving the Hospital. I had no other discussions with complainant about any |
| 97 | | medical conditions. |
| 99 | Q: | Was Complainant's request for a reasonable accommodation denied or partially denied? |
| 100 | | If so, explain why? |
| 101 | A: | Not aware of a reasonable accommodation request. |
| 103 | Q: | How are requests for reasonable accommodations generally handled by your office? |
| 104 | A: | Employees are instructed to contact the ADA Reasonable Accommodation |
| 105 | | Coordinator. I will also send an email to the Reasonable Accommodation |
| 106 | | Coordinator explaining the situation and that the employee may need a Reasonable |
| 107 | | Accommodation, if a discussion is held with me. |
| 109 | Q: | According to Complainant, her management was aware that she had contacted an |
| 110 | | EEO Counselor from the Office of Equal Opportunity. Please indicate when and how |
| 111 | | you became aware of Complainant's participation in the EEO process prior to this |
| 112 | | complaint |
| 113 | A: | I received an email from Sandra Adams on December 24, 2015 stating that an |
| 114 | | informal complaint had been lodged and I needed to participate in an interview. |
| 116 | | *She was given an employment termination letter on November 25, 2015 effective* |
| 117 | | *November 30, 2015* |
| 119 | Q: | Please explain any and all the reasons management issued Complainant a termination |
| 120 | | letter. |
| 121 | A: | Complainant was issued a termination letter because of her poor attendance as a |
| 122 | | probationary employee and there was no indication, stated, implied or otherwise |
| 123 | | from Complainant that there would be any improvement in her attendance. |
| 124 | | Complainant was being allowed to stay until the last day of her probation |
| 125 | | November 30, 2015, but she elected to resign immediately. |
| 127 | Q: | Where you involved in the decision to discharge Complainant? If so, how were you |
| 128 | | involved? |
| 129 | A: | I made the recommendation and participated in the discussions with the |
| 130 | | Enforcement Manager and Director concerning the decision to terminate |
| 131 | | complainant. |

Page 3 of 7                                            Affiant's Initials

Elizabeth Gonzalez 2016-0014 00345

Affidavit of Tyron Irvin           EEO Complaint No. 2016-0014

| | | |
|---|---|---|
| 133 | Q: | Please indicate when the decision to terminate Complainant's employment was made |
| 134 | | and the name of management making the decision. |
| 135 | A: | The decision to terminate the Complainant was made on or about November 19, |
| 136 | | 2015. The decision was made by the Director, Julianne Bowman, based on my |
| 137 | | input and recommendation. |
| 138 | | |
| 139 | Q | Provide the name and title for management who were also involved in Complainant's |
| 140 | | employment termination. |
| 141 | A: | Patricia Jaramillo, Enforcement Manager; Julianne Bowman, Director. |
| 142 | | |
| 143 | Q: | Was the reason(s) provided in Complainant's notice of employment termination |
| 144 | | discussed with her prior to November 25, 2015? If so, for every time management |
| 145 | | discussed such reason(s) with Complainant, provide the date(s), name of |
| 146 | | management, and the context of the discussion. |
| 147 | A: | Yes. I held a discussion with Complainant on July 8, 2015 concerning her |
| 148 | | excessive LWOP use. The first thing I said to Complainant was there is concern |
| 149 | | that she is using excessive LWOP and she is a probationary employee and this is |
| 150 | | the time we need to make an assessment on her employment. While she is |
| 151 | | probationary, it is much easier for us to terminate than when she is non- |
| 152 | | probationary. She described a personal home situation that was the cause of her |
| 153 | | excessive absences. I mentioned EAP and the ADA R/A coordinator as two |
| 154 | | persons that may have resources to assist her with her situation at home. I also |
| 155 | | mentioned her contacting 311 the City of Chicago non-Emergency number for |
| 156 | | other resources that may assist her in her circumstance. I just remember trying |
| 157 | | to brainstorm with her to get help. The complainant spent much of the time |
| 158 | | sobbing and asking me what should she do. I never replied to her about what |
| 159 | | she should do other than contacting the resources I named. On August 18, 2015, |
| 160 | | I held another discussion with Complainant concerning her personal situation. |
| 161 | | That meeting was held because I was aware that a representative from EAP |
| 162 | | would be in the office the following day to speak to staff concerning the benefits |
| 163 | | of EAP. Complainant's attendance had still not improved, and I was looking for |
| 164 | | ways to help her. |
| 165 | | |
| 166 | Q. | Provide a copy of documents created related to the above question, including emails |
| 167 | | sent to Complainant related to her employment termination. |
| 168 | A: | I have my notes of the two conversations held with Complainant July 8th and |
| 169 | | August 18th, and the termination notice. |
| 170 | | |
| 171 | | _She was constructively discharged on November 25, 2015_ |
| 172 | | |
| 173 | Q: | Provide a copy of Complainant's performance evaluation, disciplinary documents, and |
| 174 | | any other documents (emails, counseling, etc.) concerning the reason(s) provided for |
| 175 | | Complainant's employment termination |
| 176 | A: | There was no prior disciplines, only the two conversations I had with her. The |



Elizabeth Gonzalez 2016-0014 00346

Affidavit of Tyron Irvin                                          EEO Complaint No. 2016-0014

177  performance Eval was turned over to the DRM to place in the eOPF.
178
179  Q:   Explain the office disciplinary process for a probationary employee up to termination.
180  A:
181
182  Q:   Has the Chicago District Office terminated the employment of a probationary employee
183       in a similar situation to Ms. Gonzalez?
184  A:   Yes, Georgia Brown, Black/female, Probationary HR for attendance November 6,
185       2008.
186
187  *Whether Complainant continued to be subjected to disparate treatment and*
188  *harassment on the basis of reprisal (prior EEO activity) when, on January 8, 2016,*
189  *she received a Bill For Collection from the U.S. Department of the Interior*
190  *regarding a pay adjustment.*
191
192  Q:   To the best of your knowledge, explain why did Complainant receive a Bill For
193       Collection. If this Collection has been resolved, explain when and how.
194  A:   This is the first knowledge I have of Complainant receiving a bill for collection.
195
196  Q:   Is there anything else you would like to add that was not covered?
197  A:   When Complainant received notice of the termination, she asked why she wasn't
198       being given the opportunity to resign. I explained that this was a termination
199       meeting and if she was electing to resign, then she could tender a resignation and it
200       would be considered. Once she tendered the resignation, 10 minutes later, she was
201       allowed to resign in lieu of the termination.
202
203  I have read the above statement consisting of 5 pages. It is true and complete to the best of my
204  knowledge. I have made all necessary changes, initialing the right margin next to each such
205  change. I have also initialed each page. I understand that the information I have given is not to
206  be considered confidential and that it may be shown to the interested parties. In accordance with
207  28 U.S.C. Section 1746, I declare under penalties of perjury that the above statements are true
208  and correct to the best of my knowledge, information and belief.
209
210                        [signature]                             4/12/2016
211                     Affiant's Signature                       Date Signed
212

Page 5 of 5                                                       Affiant's Initials TI

Elizabeth Gonzalez  2016-0014  00347