UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 C 2111 |
| | ) | |
| CHARLOTTE A. BURROWS, Chair of the | ) | Judge Kennelly |
| U.S. Equal Employment Opportunity | ) | |
| Commission, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

In her Opposition, plaintiff Elizabeth Gonzalez concedes—as she must—that she was absent from work to the tune of over 250 hours of leave without pay ("LWOP") during her probationary year. Gonzalez also admits—as she must—that the undisputed email correspondence between management officials shows that the EEOC's proffered reason for her termination—her excessive absences—is wholly consistent with the concerns raised and discussed during her probationary year. Gonzalez's discrimination claims (national origin, sex, and disability) cannot survive summary judgment because she cannot establish a *prima facie* case, and she cannot show that the EEOC's explanation for her removal—her excessive absences—was a pretext for discrimination. For her failure-to-accommodate claim, Gonzalez's own testimony demonstrates that Gonzalez was not a qualified individual because she testified that her disabilities prevented her from being able to perform her work, and she offers only speculation, rather than evidence, of a reasonable accommodation being available. Finally, Gonzalez has no evidence to support her retaliation claim. Accordingly, the court should grant summary judgment in the EEOC's favor on all claims.

## Argument[1]

### I. The EEOC's Decision to Terminate Gonzalez Was for a Legitimate, Non-Discriminatory Reason, and Gonzalez Has Not Shown Any Evidence of Pretext.

To satisfy its burden on summary judgment, the EEOC need only offer admissible evidence that would allow the fact-finder "to rationally conclude that the employment decision had not been motivated by discriminatory animus." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981). It goes without saying that a poor attendance record is a legitimate, non-discriminatory reason to terminate an employee. *Contreras v. Suncast Corp.*, 237 F.3d 756, 760–61 (7th Cir. 2001). Gonzalez does not dispute—indeed, cannot—her poor, unpredictable attendance record over her probationary year. As established by the demonstrative exhibit in the EEOC's opening brief, Gonzalez repeatedly missed days of work. EEOC Mem. at 5; *see also* Dkt. 93 ¶ 17. Gonzalez admitted that she missed 252.30 hours of work by using leave without pay (LWOP) beginning in March of 2015 through November of 2015—all during her probationary year. Dkt. 93 ¶¶ 15, 17-19. These often-unplanned absences resulted in inconsistent attendance wherein Gonzalez regularly did not work her full schedule each week.

There is also no dispute that management officials expressed concern about her frequent absences early in her employment. Dkt. 93 ¶¶ 22-24. Tyrone Irvin first raised the issue with Director Julie Bowman on May 28, 2015, in an undisputed email exchange where he told Director Bowman that Gonzalez had "requested LWOP all week" and asked whether there was a concern and if he needed to have a conversation with her about its usage. Dkt. 93 ¶ 24. Director Bowman wrote back definitively, "Yes we are concerned about its use" and directed him to have a

---

[1] Dkt. 87 refers to the Defendant's Statement of Material Facts (the version filed with separated exhibits on ECF as requested by the court). Dkt. 93 refers to the Plaintiff's Response to Defendant's Statement of Materials Facts and Plaintiff's Statements of Additional Material Facts, Dkt. 93. The EEOC cites Dkt. 93 (plaintiff's response) every time the EEOC's cited fact is *admitted* by Gonzalez.

conversation with her.  Dkt. 93 ¶ 24.  Gonzalez also admits that her frequent absences and use of LWOP continued throughout the summer and into the fall of 2015.  Dkt. 93 ¶¶ 15, 17-19.  Irvin raised the issue of Gonzalez's absences again in November of 2015, the month that Director Bowman needed to decide whether to retain Gonzalez after the conclusion of Gonzalez's probationary year.  Dkt. 93 ¶ 30.  Irvin began the email with an update of Gonzalez's recent attendance, stating that he wanted to update Director Bowman so that they could "see if this latest improvement [was] acceptable or if we should still be considering other options."  *Id.*  Gonzalez again admits that this email exchange took place and does not dispute her absences from work prior to October 14, 2015.  Dkt. 93 ¶¶ 15, 17-19, 30.  Over the next few weeks, Director Bowman, Jaramillo, and Irvin met to discuss Gonzalez's attendance and whether to retain her.  Dkt. 93 ¶ 31.  Director Bowman asked Jaramillo to meet with Gonzalez to get a second management official's perspective on Gonzalez's excessive leave and the likelihood that Gonzalez's attendance would improve.  Dkt. 93 ¶ 33.  Jaramillo met with Gonzalez as requested, and emailed a contemporaneously written summary of that meeting.  Dkt. 93 ¶ 36.  Ultimately, both Irvin and Jaramillo recommended dismissal due to Gonzalez's poor attendance over her probationary year and a lack of confidence that her attendance would improve.  Dkt. 93 ¶ 37.  Those recommendations, along with their reasoning, were sent to Director Bowman via email.  Dkt. 93 ¶ 38.  The reason Director Bowman decided to terminate Gonzalez (poor attendance) is wholly consistent with the email correspondence written before any litigation was initiated, and demonstrates a legitimate, non-discriminatory reason for termination.  Dkt. 93 ¶¶ 24, 30, 32, 36, 38.

In order to survive summary judgment after the agency has offered evidence of a legitimate, non-discriminatory reason for termination, Gonzalez must provide evidence of pretext.  She cannot.  In its opening brief, the EEOC argued that even if Gonzalez could make out a *prima facie* case of discrimination, she cannot show that the EEOC's explanation for her removal — her poor

3

attendance during her probationary year — was a pretext for discrimination. EEOC Mem. at 15-17. Gonzalez argues that defendant has provided "shifting" or "changing" stories on the circumstances of Gonzalez's termination but fails to point to evidence demonstrating such. A plaintiff "cannot avoid summary judgment with an unadorned claim that the jury might not believe" the defendant's explanation for her termination. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997). The plaintiff must point to *evidence* suggesting that the defendant "did not honestly believe that explanation"; if the plaintiff's evidence "'does not amply support plaintiff's claim that the defendant's explanation is unworthy of credence, judgment as a matter of law is entirely appropriate.'" *Id*.

Gonzalez's pretext allegations are a mishmash of irrelevancies. She attempts to establish pretext in three ways: (1) her performance reviews; (2) Irvin's "approval" of LWOP; and (3) the fact that there were other Spanish bilingual IIRs who also took Spanish-speaking calls. Pl. Mem. at 4. None of these demonstrate or even support an inference of pretext.

### 1. Performance Review

Turning to Gonzalez's performance review: Gonzalez misinterprets her performance review's purpose. The EEOC, like many federal agencies, distinguishes between "performance" and "conduct" when management evaluates employees. Ex. 1, Irvin Dep. 32:11-33:8 (describing the difference between conduct and performance). Based on Mr. Irvin's trainings as a supervisor, he considered attendance to fall under "conduct" and therefore would not consider or include it in an employee's performance review. Ex. 1, Irvin Dep. 32:11-33:8 (explaining that not including attendance in Gonzalez's performance review was consistent with his training). Specifically, her performance review was an evaluation of her ability to be an adequate IIR when she was present at work. *Id.* Her evaluation of "fully successful" reflects that she performed her job well *when she was present*. *Id.*; Dkt. 93-2. And contrary to showing "shifting explanations" or evidence of

pretext, EEOC management here has been entirely consistent with their favorable evaluation of Gonzalez's abilities *when she was at work*, both in their deposition testimony and contemporaneously written emails regarding Gonzalez. Director Bowman directly stated as such in her affidavit ("The Complainant was a good employee but had difficult attendance issues." Bowman Aff. Ln. 215, Dkt. 87-3) and in Director Bowman's email correspondence ("When she is in the office, she does good work, and we would like to try some other avenues to see if she can get her attendance under control." Dkt. 87-19; Dkt. 93 ¶ 32). The EEOC never argued or stated that Gonzalez was not a good employee *when she was present* for her job. But whether she was able to perform the job *when she was at work* is entirely irrelevant because she was not consistently *present* to perform at work. Gonzalez's misunderstanding of what her performance review evaluates is not enough to establish pretext. Gonzalez has no evidence that attendance should have been included in her performance review—rather the evidence shows that EEOC management followed their training on EEOC policy when evaluating Gonzalez for her performance review, even after she was terminated.

### 2.     Granting LWOP

Second, Gonzalez argued that Irvin's "approval" of Gonzalez's LWOP requests somehow supports evidence of pretext. But Irvin's decision to grant Gonzalez the use of LWOP was for Gonzalez's *benefit* so that she would not be charged AWOL for her absences.[2]  According to Gonzalez's argument, Irvin should have *denied* any use of LWOP to Gonzalez, thereby marking those days AWOL, potentially leading to discipline and possibly her termination much earlier in her probationary year. Placing her on AWOL status, instead of LWOP, would have been

---

[2]  When an employee has no annual leave or sick leave available—as was Gonzalez's case during her probationary year—and the employee misses work, there are only two possible leave options: leave without pay (LWOP) or AWOL. Dkt. 87-4 at 55, 67-69.

particularly harsh, given that when Irvin met with her in person over the summer of 2015, Gonzalez shared with him that she was involved in a domestic violence abuse situation. DSOF ¶ 26. The EEOC should not be penalized for providing Gonzalez LWOP on days she called off of work instead of marking her AWOL. Indeed, demonstrating a lack of discriminatory animus, at every turn, EEOC management attempted to work with Gonzalez and provide her ample opportunity to improve her attendance.

Furthermore, Irvin's decision to grant Gonzalez's requests of LWOP is consistent with his notes from his meetings with Gonzalez when he counseled Gonzalez on her attendance and told her it needed to improve. Dkt. 87 ¶¶ 25-29. Jaramillo again discussed attendance with her in their meetings. Gonzalez admitted that during the November 17, 2015 meeting, Jaramillo told her, "I'm gonna get right to the point. You're taking excessive leave. You're still a probationary employee." Dkt. 93-3 Gonzalez Dep. 153:3-6. A reasonable jury, given all of the undisputed evidence of her attendance issues, could not find any evidence of pretext based on Irvin granting her LWOP.

### 3. Coverage when Absent

Third, Gonzalez argues that the EEOC's statement that her calls were not covered by someone else is false, and that this is somehow evidence of pretext. Pl.'s Mem. at 4. Gonzalez misunderstands defendant's argument. Defendant is not arguing that no one picked up Spanish-speaking calls for the hotline when Gonzalez was absent. *See* EEOC Mem. at 5. As Patrick DeWolf explained in his declaration, all calls to the hotline get distributed to all the available IIRs, which include several Spanish speaking IIRs, not just Gonzalez. Dkt. 93 ¶ 64; Dkt. 87-2, DeWolf Decl. ¶¶ 2-4. The parties agree as to that fact. However, the EEOC's statement that Gonzalez's "calls were not covered by anyone else," EEOC Mem. at 5, was explaining that—unlike other positions where someone's absence is covered by a substitute or another employee—no one is "covering" the work that Gonzalez would have done (the calls that she would have answered) on

a day she is absent; rather, the calls that Gonzalez would have answered are just redistributed to the available IIRs when she is absent.  Dkt. 93 ¶ 64; Dkt. 87-2, DeWolf Decl. ¶ 4.  DeWolf explained this clearly in his declaration: "Absenteeism greatly impacts this small group as we do not have a surplus of staff to use for backfilling those employees who are absent. When a staff member is absent, it means that it is that many more calls that the IIG will not be able to answer for that day. It also means longer wait times for even those that are able to get through."  Dkt. 93 ¶ 64; Dkt. 87-2, DeWolf Decl. ¶ 4.  How the EEOC's hotline system works is not genuinely in dispute.  This argument comes down to semantics, and still provides no evidence of pretext.

Gonzalez argued that the EEOC's statement—calls not being covered by anyone else—was the EEOC's "newest story."  But the EEOC included Patrick DeWolf's declaration to explain the impact on the agency when IIRs were absent and why reliable attendance is an essential function of the IIR position, not to provide an explanation for the EEOC's decision to terminate. Director Bowman made the decision to terminate Gonzalez at the end of her probationary year due to her excessive absences and a lack of sign of any improvement of her attendance.  Dkt. 87 ¶¶ 40-41.  And Director Bowman's explanation for the termination is consistent with the record evidence and has remained consistent throughout the relevant time period and litigation.  The following record evidence shows consistency: Gonzalez's attendance record, Dkt. 93 ¶¶ 15, 17-19; the recommendations from her two management officials (Jaramillo and Irvin), Dkt. 93 ¶¶ 37-38; Director Bowman's contemporaneous emails, Dkt. 93 ¶ 32; Gonzalez's termination letter, Dkt. 93 ¶ 41; and Director Bowman's affidavit, Dkt. 87-3.  There is no "newest" or changing story.

Thus, none of Gonzalez's three empty arguments for pretext come close to providing sufficient evidence of discrimination here.  In order to withstand summary judgment, Gonzalez must point to evidence that the proffered reason (poor attendance) was pretextual, and as demonstrated above, she did not.  Pretext for these purposes "means a dishonest explanation, a lie

rather than an oddity or an error," *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 685 (7th Cir. 2000). There is simply no evidence that Director Bowman's reasoning (in which two other management officials concurred) for terminating Gonzalez was in any way dishonest. In fact, Director Bowman requested an extension of Gonzalez's probationary period in order to provide her an opportunity to significantly improve her attendance, Dkt. 93 ¶ 32, and although Director Bowman was informed that federal regulations did not allow such an extension, Dkt. 93 ¶ 39, the fact that she tried to find a way to retain Gonzalez—even though she was not able to— belies any assertion that Director Bowman was lying about her reasoning and acting pursuant to unlawful motives.

Lacking pretext *evidence*, her discrimination claims should be dismissed. *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001) (A "pretext for discrimination" means "more than an unusual act" and "something worse than a business error"; it means "deceit used to cover one's tracks."). The court, however, does not even need to reach the question above because Gonzalez failed to establish a *prima facie* case, as described below.

## II.     Gonzalez Also Has Not Established a *Prima Facie* Case.

### 1.     Gonzalez Failed to Meet the EEOC's Legitimate Expectations.

Gonzalez argues that she was meeting the EEOC's legitimate expectations for four reasons: (1) her performance review was marked "successful"; (2) Irvin approved her requests for LWOP; (3) reporting to the office was not a requirement for Gonzalez's job; and (4) Gonzalez's calls were covered by other employees when she was absent. The first, second, and fourth arguments were addressed above and will not be repeated here but are incorporated by reference.

Turning to Gonzalez's third argument that reporting to the office was not a requirement: First, reporting to the office was a requirement for *Gonzalez* because her work required special equipment that was installed at the EEOC's Chicago office. Director Bowman explained this in

her affidavit: "Complainant was an IIR. Her job consisted of responding to phone calls from the public about the EEOC and the work we do. The IIRs use special equipment and computer systems to do their work. While making that equipment and those systems available at Complainant's home might have been doable, the agency would not have been able to do so between the time she requested to work at home and the end of her probationary period."). Thus, to perform her work as an IIR, Gonzalez needed to report to the office in order to use her specialized equipment. *Id.* The fact that it would be *possible* to do an IIR job remotely is beside the point. Second, attendance for the IIR position is a requirement of the job, and the undisputed facts show that Gonzalez failed to meet that requirement. *See supra*. Gonzalez does not contest the case law cited by the EEOC in its opening brief that supports the legal proposition that attendance is an essential function of many positions. EEOC Mem. at 12 (cases cited therein). She also is unable to contest DeWolf's declaration that explains why attendance is critical for the IIR position. Thus, none of Gonzalez's four arguments demonstrate that she was meeting the EEOC's legitimate expectations.

## 2. Gonzalez Cannot Point to Similarly Situated Comparators Who Were Treated More Favorably.

In discussing the similarly situated requirement, Gonzalez did not address the EEOC's main point—which is that Gonzalez has no evidence that any of the identified comparators were absent from work as much as, or more than, Gonzalez. *Jones v. Nat'l Council of Young Men's Christian Associations of the United States of Am.*, 48 F. Supp. 3d 1054, 1134 (N.D. Ill. 2014) ("In a disparate discipline case, the similarly-situated inquiry often hinges on whether coworkers 'engaged in comparable rule or policy violations' and received more lenient discipline."). Although it is Gonzalez's burden to demonstrate evidence that these individuals are similarly situated, the EEOC now provides rebuttal declarations that establish the facts of the alleged comparators LWOP usage—none of them match or exceed Gonzalez's use of LWOP. Kenneth

Jones used 0 hours of LWOP during the course of his probationary year from 2014 to 2015. Exs. 3-4. Thus, he is not similarly situated to Gonzalez who used over 250 hours of LWOP. Alison Hardiman did not use any LWOP from 2014 to 2015. Exs. 3-4. Thus, she is not similarly situated, even setting aside the fact that she had an entirely different position (information technology specialist), was not a probationary employee, and had been with the EEOC for many years. DSOF ¶ 66. And the IIRs who were employed under the Schedule "A" hiring authority through the National Telecommuting Institute used LWOP in the following amounts: 0 hours, 32 hours, 61 hours, 0 hours, 0 hours. Exs. 2-3.[3] Thus, none of the alleged comparators had similar attendance issues as Gonzalez—over 250 hours of LWOP in her *probationary* year—and therefore are not similarly situated.

Gonzalez argues that allowing five other IIRs to telework, but not Gonzalez, is evidence of discrimination. It is not. First, this argument distracts from the central issue in her disparate treatment claim—that she was treated less favorably than those similarly situated than her because she was *terminated*. Her disparate treatment claim is not based on any supposed right to telework. Gonzalez has not shown (because she cannot) any similarly situated individual who was outside her protected class who was retained after their probationary period despite excessive absences.

Moreover, the purpose of the similarly situated inquiry is to establish whether the EEOC treated someone *outside* the protected class more favorably—which would be evidence that they were treating an employee with protected characteristics less favorably *because of* their protected characteristics. The same logic does not hold if the evidence shows that the EEOC treated disabled individuals "*more favorably*" than Gonzalez. This evidence creates no logical inference that

---

[3] The individual who used 61 hours (less than a quarter of the number of hours used by Gonzalez) did so during her first pay period on the job due to an error in determining her start date. She did not use any LWOP thereafter, and thus, did not have *ongoing*, inconsistent attendance as Gonzalez did.

Gonzalez was being treated less favorably *due to her* disabilities. Gonzalez's cited case law is inapposite. *Prewitt v. U.S. Postal Service*, 662 F.2d 292 (5th Cir. 1981), and *Vestal v. Heart of CarDon, LLC*, No. 17 C 155, 2018 WL 3008638 (S.D. Ind. 2018), stand for the proposition that a member of a protected class can still discriminate against a member of its own protected class and that merely hiring other disabled individuals does not prevent the employer from discriminating based on disabilities of a different employee. Neither case supports the use of the five IIRs here as comparators, and Gonzalez's cited quotations are specifically not related to a comparator analysis. Gonzalez offers no cases where the court found that the similarly situated element was met where plaintiff relied on members of the same protected class being treated more favorably.

In addition, the IIRs hired under the EEOC's Schedule "A" hiring authority through the National Telecommuting Institute were not similarly situated—not only because they did not use LWOP in equal amounts as Gonzalez—but because they were hired under a different hiring process. As stated by Patrick DeWolf, the current program manager for the Information Intake Group and the former manager of the IIG unit during the relevant time period, these individuals were "hired with the understanding that they would be able to telework from home 100% of the time as a reasonable accommodation. . . . Although their specific disability was not shared with me, it was my understanding that they were related to severe mobility issues, thus the requirement to work 100% from home." Dkt. 87-2, DeWolf Decl. ¶ 5; Dkt. 93 ¶ 69. He further explained that this process was different than the "normal USAJOB posting" under which Gonzalez was hired. *Id.* Being hired under an entirely different program than Gonzalez is a distinct difference that also makes these individuals not similarly situated.

And finally, even if considered relevant to her disparate treatment claim, teleworking would not have fixed Gonzalez's attendance issues based on her own testimony. If she could not get out of bed due to her disabilities, she could not work either at home or at the EEOC's office.

11

Telework is still supposed to be *work*. Dkt. 93, PRDSOF ¶¶ 53-56, 59 (citing Gonzalez's own testimony). Her *belief* and testimony that she would have been able to telework does not overcome her factual testimony about her own disabilities, including her inability to get out of bed or work at all due to her disabilities. *Id.*

Rather, the evidence shows that the EEOC treated Gonzalez consistently with those outside of her protected class. Georgia Brown was an IIR supervised by Irvin and was terminated during her probationary period due to attendance issues, Dkt. 93 ¶ 68, the same as Gonzalez. Because Gonzalez cannot identify a similarly situated comparator outside the protected class who was treated more favorably, she cannot establish a *prima facie* case, and summary judgment should be granted to the EEOC.

## III. The EEOC's Opening Brief Establishes that Gonzalez Is Not a Qualified Individual, and No Reasonable Accommodation Was Available.[4]

The court has sufficient evidence to grant summary judgment in the EEOC's favor based on the arguments in its opening brief. In its opening brief, the EEOC argued that Gonzalez's admitted inability to regularly work defeats her claim of being a *qualified* individual with a disability, based on her own testimony, EEOC Mem. at 17-19, and that there was no evidence of an available reasonable accommodation, EEOC Mem. 19-22. Gonzalez did not address or contest the ample Seventh Circuit case law provided by the EEOC supporting its position or the declaration of Patrick DeWolf describing attendance as an essential function of Gonzalez's position. EEOC Mem. at 18-21 (DSOF ¶¶ 64 (DeWolf Decl.) and cases cited therein. For the reasons provided in its opening memorandum, summary judgment should be granted to the EEOC. Notably, Gonzalez's testimony that she *believed* that she would have been able to do her job if she had been

---

[4] The EEOC reserves the right to respond to Gonzalez's arguments related to her disabilities after receiving Gonzalez's medical records, Dkt. 95, if the court grants the EEOC's motion to compel, Dkt. 64.

teleworking from home cannot stand next to (1) her factual testimony of what her medical condition was like over the relevant time period (Gonzalez herself acknowledged that on days that she could not control her disabilities, *she could not work*, Dkt. 93 ¶¶ 53-56, 59, and (2) her testimony that directly contradicts what Gonzalez now attempts to rely on, Dkt. 87 ¶¶ 57, 60 ("Q. So as you sit here today you don't know how teleworking would have helped you? A. Correct." Gonzalez Dep 152:20-22, Ex. N; *see also* Dkt. 93-3 at 19, Gonzalez Dep. 66:19-67:24, Ex. N). Given Gonzalez's own testimony about her medical condition, her contradictory testimony about whether teleworking would have allowed her to work, and her excessive absences, no reasonable jury could find in her favor that she was a qualified individual and that a reasonable accommodation was available. Her own speculation that a reasonable accommodation was available is not enough to survive summary judgment. *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 289 (7th Cir. 2015) (plaintiff bears the burden of providing "*non-speculative, non-conclusory evidence* that a proposed accommodation or treatment would have allowed him to adequately perform the essential functions of his job." (emphasis added)).

Gonzalez cannot seek haven in the interactive process argument. As a legal matter, a claim for a failure to engage in the interactive process cannot stand alone; a plaintiff must still prove that a reasonable accommodation was available, and as discussed above, Gonzalez cannot do so. *Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013) ("However, the failure to engage in the interactive process required by the ADA is not an independent basis for liability under the statute, and that failure is actionable only if it prevents identification of an appropriate accommodation for a qualified individual. Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation."). In regards to teleworking, Gonzalez requested to telework for the first

time on November 17, 2015, during her meeting with Jaramillo, twelve days before her termination. Dkt. 93-3 at 39, Gonzalez Dep. 149:15-24; Dkt. 87-20. And Gonzalez admitted that Jaramillo told Gonzalez that she could request an accommodation through the ADA coordinator.[5] Dkt. 87 ¶ 46 (citing Dkt. 89-14 (sealed), Gonzalez Dep 166:1-10). On November 20, 2015, five days before her termination, Gonzalez reached out to Rodney Yelder, the ADA coordinator, for the first time. Dkt. 93 ¶ 47. Yelder responded that same day, providing the form and directing Gonzalez to submit medical documentation. Dkt. 93 ¶ 48. Gonzalez submitted the form but never provided medical documentation. Dkt. 93 ¶¶ 49-50. Gonzalez was terminated on November 25, 2015. A pending accommodation request does not prevent legitimate, non-discriminatory disciplinary action. *Tate v. Ancell*, 551 Fed. Appx. 877 (7th Cir. 2014). For all of these reasons, the EEOC is entitled to summary judgment on Gonzalez's failure-to-accommodate claim.

## IV. Gonzalez Has No Evidence of Retaliation.

Gonzalez has no evidence supporting her retaliation claim. Harold Sneath's declaration makes clear that the EEOC never provided any substantive information about Gonzalez. Dkt. 87-25, Sneath Decl. ¶ 4. Gonzalez's argument to the contrary is based on a factual misunderstanding: Yolanda Tanks does not and did not work for the EEOC; she was a TSA employee. Harold Sneath provided a declaration that clarifies that his reference to Yolanda Tanks in the EEOC section was in error. Dkt. 87-25, Sneath Decl. ¶ 5. There is no *genuine* dispute as to this fact because Harold Sneath, the investigator, and Yolanda Tanks herself, would be the only individuals with personal

---

[5] At the latest, Gonzalez was informed of the proper means to request an accommodation on July 23, 2015, when the EEOC sent out an employee-wide email with instructions on how to request a reasonable accommodation. Ex. 5. Gonzalez admittedly did not do so until November 20, 2015, five days before her termination, after her possible termination became apparent. Dkt 93. ¶¶ 47-48. *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996) ("Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown [in the interactive process].").

knowledge to know whether Yolanda Tanks is employed by the TSA or the EEOC. Gonzalez never sought to depose either Harold Sneath or Yolanda Tanks. Gonzalez tries to get around this by relying on her own testimony that Sneath told *her* about what Yolanda Tanks said to him. First, this is inadmissible hearsay because it is being offered for the truth of the statements asserted, and thus does not constitute admissible evidence. And even ignoring all of these faults, Gonzalez has no evidence of causation. No reasonable jury would find that (1) these fairly minor inaccuracies reported by Yolanda Tanks were made in retaliation, and (2) that they led to the retraction of Gonzalez's employment offer when provided with absolutely no evidence of why her employment offer was rescinded. Gonzalez, through discovery, had ample opportunity to subpoena decisionmakers of the CBP and/or other individuals involved in the rescission of her employment offer. However, she did not do so. No reasonable juror could find in her favor on this claim, and thus, summary judgment should be granted to the EEOC.

## Conclusion

For the above reasons, the court should grant summary judgment on all claims in the EEOC's favor.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:  s/ Valerie R. Raedy
    VALERIE R. RAEDY
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-8694
    valerie.raedy@usdoj.gov