**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ELIZABETH GONZALEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 2111** |
| | ) | |
| **JANET DHILLON, Chair,** | ) | |
| **United States Equal** | ) | |
| **Employment Opportunity Comm'n,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge,

Elizabeth Gonzalez has sued her former employer, the United States Equal

Employment Opportunity Commission, for employment discrimination.  She alleges (1)

sex and national origin discrimination in violation of 42 U.S.C. § 2000e-2(a)(1) (count

one); (2) failure to accommodate a disability in violation of the Rehabilitation Act, 29

U.S.C. § 794(a) (counts two and three); and (3) retaliation in violation of 42 U.S.C. §

2000e-3 (count four).  The EEOC has moved for summary judgment on all four of

Gonzalez's claims.  For the reasons below, the Court denies the motion on the failure to

accommodate claim but otherwise grants summary judgment in favor of the defendants.

**Background**

The following facts are undisputed except where otherwise noted.  Gonzalez's

national origin is Mexican, her sex is female, and she is disabled.  Gonzalez was

employed for the EEOC's Chicago District Office as an information intake representative

(IIR).  Her employment began on December 1, 2014 and was terminated on November 25, 2015 because the EEOC believed she had excessive, unscheduled absences from work.

Gonzalez's employment was subject to a year-long probationary trial period, which ended on November 30, 2015.  As an IIR, Gonzalez's primary responsibility was to answer calls and e-mails from members of the public seeking information about filing EEOC claims.  IIRs collectively receive approximately 500,000 to 600,000 phone calls and 25,000 emails annually.  As a Spanish-speaking IIR, Gonzalez was specifically hired to field inquiries from Spanish-speaking callers.  During her employment, both Tyrone Irvin and his manager Patricia Jaramillo supervised Gonzalez and met with her regarding her attendance issues.  As District Director of the EECO's Chicago District Office, Julianne Bowman was the decisionmaker regarding Gonzalez's termination.

Leave without pay (LWOP) is a form of temporary, unpaid absence from duty that may be granted upon on an employee's request.  The EEOC restricts LWOP by mandating that employees seek permission from their supervisors for up to 10 days and approval from the District Director for up to 30 days.  The Chief Human Capital Office of the EEOC must authorize any LWOP that exceeds 30 days.

Gonzalez took 252.30 hours of LWOP from March through November 2015, along with 96 hours of annual leave and 95.45 hours of sick leave.  In one particular pay period, Gonzalez used 62 hours of LWOP, which was somewhere between 50 and 75 percent of her scheduled work time for that pay period.[1]  All of this leave was approved

---

[1] The parties dispute whether it was over 50 percent or over 75 percent of Gonzalez's scheduled work time for that pay period.

by Irvin in order to prevent Gonzalez's absences from being classified as "absent without leave" (AWOL), which could have triggered disciplinary action against her.

In late May 2015, after receiving a text message from Gonzalez regarding issues she was having at home, Irvin consulted with Bowman about his concerns regarding Gonzalez's mounting absences. Bowman then suggested that Irvin address these issues with Gonzalez directly, which he confirmed he was planning to do at their meeting scheduled for the following Monday. At that June 1, 2015 meeting, Gonzalez disclosed to Irvin that she was experiencing domestic violence at home. Irvin suggested that Gonzalez contact the EEOC's Employee Assistance Program (EAP) or the Disability Program Manager (DPM). Irvin also reported this conversation back to Bowman. Gonzalez continued to call out of work and take significant LWOP throughout the summer of 2015. On August 19, 2015, after noticing a lack of improvement with her attendance, Irvin again encouraged Gonzalez to attend an EAP meeting that would be held at the agency the following day.

In early November 2015, Irvin, Bowman, and Jaramillo convened to discuss Gonzalez's irregular attendance and whether to terminate her at the end of her probationary period. Bowman also e-mailed Disability Program Manager Rodney Yelder and Chief Human Capital Officer Steve Schuster about Gonzalez's situation. In her e-mail, Bowman specifically asked to extend Gonzalez's probationary period so that she could have an opportunity to approve her attendance record and asked if such an extension could be considered a reasonable accommodation. Bowman also suggested moving Gonzalez to a different position within the EEOC if the extension were granted or offering Gonzalez part-time employment.

3

On November 17, 2015, Jaramillo and Gonzalez met to discuss Gonzalez's attendance record and what could be done to improve it. After the meeting, Jaramillo sent an e-mail to Bowman and Irvin summarizing their discussion. According to the summary, Gonzalez said that she was not interested in working part time, her absences were due to both health issues and issues with her son subjecting her to domestic violence, and she suffered from migraines. Gonzalez also asked Jaramillo if she could work from home on days when she had migraines.

Though the EEOC has employed five other disabled IIRs with specific authorization to telework due to their restricted mobility, it disputes Gonzalez's suggestion that all IIRs could, and were permitted to, telework from home. In addition, Gonzalez's testimony regarding her own *personal* ability to fulfill her essential duties from home, given the volatility and intensity of her disabilities, has been somewhat inconsistent.

The following day, Irvin and Jaramillo met to discuss their recommendation of whether to retain or terminate Gonzalez at the end of her probationary period. Both parties agree that Gonzalez was otherwise meeting expectations, and this is corroborated by her performance review as of November 23, 2015. The EEOC, however, disputes that Gonzalez's performance review would have included assessments of her attendance, saying that it considers attendance a conduct, rather than a performance, issue. After deciding to terminate Gonzalez, Irvin and Jaramillo e-mailed Bowman their recommendation. Bowman was simultaneously advised that the EEOC could not extend Gonzalez's probationary period due to OPM regulations.

Three days later, on November 20, 2015, Gonzalez requested and subsequently

received information from Yelder about how to request a reasonable accommodation. Yelder provided Gonzalez with the necessary form and instructed her to fill it out and return it to him along with medical support. Three days after that, Gonzalez again requested and received information from Yelder regarding the specific kind of medical support required. Gonzalez ultimately submitted the completed request form to Yelder, albeit without the required supporting medical documentation. Moreover, Gonzalez's testimony about whether a reasonable accommodation—particularly teleworking—could improve her attendance was, again, somewhat inconsistent.

On November 25, 2015, Gonzalez was scheduled for a 1:30 p.m. termination meeting. Shortly before the meeting, Gonzalez sent an e-mail to management and other personnel requesting further accommodations. At the meeting, after Gonzalez was told she was being terminated, she elected to resign effective immediately rather than continue working until the last day of her probationary period, which was November 30, 2015.

## Discussion

To succeed on a motion for summary judgment, the EEOC must show that "there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When deciding a summary judgment motion, courts must "construe all inferences in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v.*

*Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted).

Although "the mere existence of *some* alleged factual dispute between the parties" is

insufficient to preclude summary judgment, courts should apply the standard with

special scrutiny to employment discrimination cases, which often turn on the issues of

intent and credibility.  *See Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692

(7th Cir. 2000) (emphasis in original) (quoting *Anderson*, 477 U.S. at 247).

**A.    Discrimination claims**

In counts 1 and 4 of her complaint, Gonzalez alleges that the EEOC violated Title

VII by both terminating her and then retaliating against her because of her Mexican

national origin, female sex, and engagement in protected activity.  42 U.S.C. § 2000e-

2(a).

One method of proving employment discrimination is through the *McDonnell*

*Douglas* burden-shifting framework.  *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir.

2021); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this

approach, the plaintiff must first establish a prima facie case of discrimination.

*McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff makes such a showing, the burden

shifts to the employer to provide a "legitimate, nondiscriminatory reason" for its actions.

*Id*.  Once the employer does so, the burden shifts back to the plaintiff to present

evidence that the stated reason is a pretext for discrimination.  *Id.* at 804.

Another method is through the arguably simpler *Ortiz* standard, which asks only

whether the evidence would permit a reasonable factfinder to conclude that a

"proscribed factor caused the discharge or other adverse employment action." *Ortiz v.*

*Werner Enters.*, Inc., 834 F.3d 760, 765 (7th Cir. 2016).  In *Ortiz*, the Seventh Circuit

6

identified three broad types of circumstantial evidence that will support an inference of intentional discrimination: "(1) ambiguous or suggestive comments or conduct; (2) better treatment of people similarly situated but for the protected characteristic; and (3) dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Sch*., 953 F.3d 923, 929 (7th Cir. 2020).  This analysis—particularly the third and fourth factors regarding similarly situated individuals and pretextual justifications for disparate treatment—largely calls for the same analysis required by the *McDonnell Douglas* framework, which is delineated below.  In this case, summary judgment comes out the same way irrespective of which of the two standards one applies.

### 1.    Prima facie case

To establish a *prima facie* case of discrimination, the plaintiff must show that: (1) she is a member of a protected class, (2) her performance met the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) a similarly situated individual outside of the protected class received more favorable treatment.  *Khowaja v. Sessions*, 893 F.3d 1010, 1014-15 (7th Cir. 2018).  The parties do not dispute that Gonzalez is a member of a protected class because of her sex and national origin, and they likewise do not dispute that her termination was an adverse employment action.  Accordingly, the Court will focus on the second and fourth elements of the *prima facie* case.

#### a.    Legitimate expectations

The EEOC contends that Gonzalez failed to meet its legitimate expectations because she failed to present herself for work on a consistent basis throughout her first probationary year of employment with the agency.  In response, Gonzalez argues that

this reason is pretext for unlawful discrimination. When an employee contends that the employer's stated reason is pretextual, "the analysis of the legitimate expectations inquiry merges with the pretext analysis." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). Consequently, the Court discusses both together in the pretext section below.

### b.     Treatment of similarly situated employees

Gonzalez identifies several other EEOC employees as similarly situated individuals, and she argues that they were treated more favorably than her because the EEOC provided them with various accommodations. A court must consider "all the relevant factors" when determining whether employees are directly comparable, including "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications—provided the employer considered these latter factors in making the personnel decision." *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 532 (7th Cir. 2003). The comparators "need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). "So long as the distinctions between the plaintiff and the proposed comparators are not 'so significant that they render the comparison effectively useless,' the similarly-situated requirement is satisfied." *Id.*

Because the EEOC argues that Gonzalez was terminated due to her poor attendance record, the proper comparators are other employees who were retained despite their excessive absenteeism, not those who were given reasonable accommodations. *Jones v. Nat'l Council of Young Men's Christian Associations of the*

8

*United States of Am.*, 48 F. Supp. 3d 1054, 1134 (N.D. Ill. 2014) ("In a disparate discipline case, the similarly-situated inquiry often hinges on whether coworkers 'engaged in comparable rule or policy violations' and received more lenient discipline."). *See also Brown v. Chicago Transit Auth.*, No. 17 C 8473, 2020 WL 777296, at *7 (N.D. Ill. Feb. 14, 2020) (citing *Williams v. Extra Space Storage, Inc.*, No. 16 C 3313, 2019 WL 2994530, at *15 (N.D. Ill. July 9, 2019) (plaintiff needed to present evidence that a co-worker engaged in conduct similar to that of the plaintiff in order to be similarly situated).  Thus the question is whether a reasonable jury could find that any of the other EEOC employees identified by Gonzalez similarly took excessive leave without pay and yet were not terminated from their positions.

There is no genuine factual dispute on this point.  Like Gonzalez, both Kenneth Jones (African American) and Georgia Brown (African American) were IIRs who were supervised by Irvin.  Jones was not terminated by the EEOC.  There is no evidence, however, to suggest that Jones missed anywhere near as many hours of work as Gonzalez.  For example, throughout his 2014-2015 probationary year, Jones used zero hours of LWOP, whereas Gonzalez used over 250.  For this reason, no reasonable jury could find he was similarly situated.  Brown, on the other hand, was terminated during her probationary period due to attendance issues, just as Gonzalez was.  Thus no reasonable jury could find that Jones or Brown were similarly situated employees who were treated more favorably than Gonzalez.

As other comparators, Gonzalez offers the five IIRs who were hired via a special program designed for candidates who would need to work from home due to their limited mobility.  She also offers Alison Hardiman, an African-American IT specialist

supervised directly by Bowman who had been employed with the EEOC for many years and was given certain accommodations. These, too, are inappropriate comparators, as there is no evidence of any of them taking excessive LWOP and remaining employed by the EEOC. Instead, Gonzalez offers these individuals as examples of similarly situated employees whose disabilities were accommodated while hers were not. This is a point more properly discussed regarding her failure to accommodate claim, not her discrimination claims. Thus the Court will not address it here.

In sum, no reasonable jury could find that Gonzalez was treated less favorably than similarly situated EEOC employees.

### 2. Pretext

The EEOC has offered a legitimate, non-discriminatory reason for terminating Gonzalez, namely, that she was consistently and excessively absent from work, putting a strain on her small unit and impacting Spanish-speaking members of the public seeking advice from the EEOC. The agency further contends that Gonzalez was terminated because her attendance did not improve, even after supervisors addressed it with her on multiple occasions, and because OPM policy foreclosed the possibility of extending her probationary period to allow her more time to improve. As the Court has noted, this merges with one element of Gonzalez's prima facie case, so the Court considers the two points together. The pretext inquiry involves assessing whether the employer's reason for termination was "the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

In this case, the EEOC argues that its legitimate expectations include consistent

attendance from its employees, particularly those with unique language skills such as Gonzalez. This is reflected in EEOC policy, deposition testimony, and e-mails produced in discovery—all of which demonstrate a consistent and well-documented history of the agency being concerned with Gonzalez's absenteeism and its impact on other IIRs.

Gonzalez argues that she was indisputably meeting legitimate expectations because her last performance review said that she was meeting expectations as of November 23, 2015. She also argues that the leave she took, which EEOC deems excessive, was all approved by her supervisor. Neither of these points has merit.

Regarding the performance evaluation, the EEOC argues that attendance is considered "conduct," and not "performance," so Gonzalez's attendance record would not have been included in her performance review. Gonzalez points to no evidence that would permit a reasonable jury to find otherwise. The agency does not dispute that Gonzalez performed well when she was present at work, but that is not the issue here.

Regarding Irvin's approval of her leave, Gonzalez overstates his acceptance of, or tolerance for, her absences. Though Irvin did testify that he approved all her leave without pay (LWOP), the record makes it clear that he did so while simultaneously raising his concerns with his own manager and with Bowman. Irvin also testified, and the parties agree, that he approved Gonzalez's leave (1) to prevent it from being classified as AWOL, which would expose her to disciplinary action; and (2) due to past issues with EEOC employees taking excessive LWOP, which is meant to be restricted. Though Gonzalez argues that she was meeting expectations despite taking a very large amount of leave time, she does not dispute the amount of leave that the EEOC says she took, nor does she offer evidence that would give rise to a genuine dispute over the

proposition that Irvin approved her leave only to shield her from disciplinary action. Based on the available evidence, a reasonable jury could not find that Gonzalez satisfied the EEOC's legitimate expectations given the amount of leave she took during her short probationary period. The Court concludes that there is no genuine factual dispute on this point.

Even if Gonzalez cannot show that she met the EEOC's legitimate expectations, her claims can still survive summary judgment if other employees who failed to meet those same expectations were treated more favorably. An employee may establish pretext by "providing evidence that a similarly situated employee outside her protected class received more favorable treatment." *Coleman*, 667 F.3d at 841.

As discussed in the comparators section of this opinion, however, Gonzalez has not offered evidence that would permit a reasonable jury to find that there were other similarly situated EEOC employees who were retained despite taking excessive leave. Thus no reasonable jury could find that the EEOC's proffered reason for terminating her was pretextual.

### 3. *Ortiz* analysis

As noted above, to survive summary judgement under the *Ortiz* inquiry, Gonzalez must produce evidence that would permit a rational jury to conclude that the EEOC terminated her because she belongs to a protected class. Some factors that the Court would have considered, if they had been offered, are "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015). But

12

Gonzalez has failed to offer any evidence, circumstantial or direct, that would permit a reasonable finding that she was terminated because she was a Mexican woman. Nor has Gonzalez offered evidence that would permit a reasonable jury to find that she was treated less favorably regarding her attendance issues from similarly situated employees outside her classes or that the agency's proffered reason for terminating her was pretextual, contrived, or inconsistent.

Accordingly, the EEOC is entitled to summary judgment on Gonzalez's Title VII discrimination claims.

### 4. Retaliation

To survive summary judgment, an employee alleging retaliation under Title VII must present evidence that would permit a reasonable jury to find that: (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal link between the two. *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). Gonzalez's evidence falls short on the requirement of a causal link.

First, neither Gonzalez's complaint nor her response to the EEOC's opening brief make clear what she contends the EEOC retaliated against her for. Her complaint states only that she engaged in protected EEO activities of which the EEOC was aware. Gonzalez contends that the EEOC then provided damaging information about her to a potential employer, the United States Customs and Border Protection, in retaliation. But Gonzalez fails to identify any evidence that would permit a jury to find a causal link between whatever her protected activity was and her subsequent inability to secure a position at CBP.

Most of the points offered by Gonzalez on the retaliation claim appear to be

based on what the EEOC contends is an error in CBP-contracted investigator Harold Sneath's report of investigation, as explained in detail in the agency's reply brief. Gonzalez says that Sneath's report reflects that he spoke directly to an employee of the EEOC about her (and the written report likely would be admissible at trial). The EEOC has offered an affidavit from Sneath saying that the only person he spoke to about Gonzalez—a woman named Yolanda Tanks—was an employee of the Transportation Security Administration (TSA), not the EEOC. Sneath says that the individuals at the EEOC to whom he reached out for information about Gonzalez, Irvin and Jose Romo, never responded to his inquiries. He also says that his reference to Tanks in his report was made in error and that as Tanks was a TSA employee who was interviewed earlier as a TSA employer reference. Gonzalez testified during her deposition, however, that Sneath talked to her about his conversation with Tanks and said that Tanks provided the following inaccurate information about her to Sneath on behalf of the EEOC: (1) Gonzalez was working part-time with TSA; (2) her start date with TSA was June 19, 2014 rather than the correct date of June 29, 2014; and (3) she began working at the EEOC as an intern. Gonzalez's testimony likely would be admissible at trial to impeach Sneath's explanation of his report.

But even if Gonzalez's reading of the events is right—specifically that Tanks was associated with the EEOC and did speak to Sneath about Gonzalez—no reasonable jury could find that providing inaccurate information about Gonzalez's start or her affiliation with TSA was retaliatory. Gonzalez has not presented any evidence that Tanks was aware of her prior protected activity or that the timing of Tanks' conversation with Sneath would permit a reasonable inference that Tanks was retaliating for

protected activity that Gonzalez had undertaken.  Rather, Gonzalez's only evidence, her

own testimony, is that she did not receive an offer of employment from CBP sometime

after a person she contends is an EEOC employee—regarding whom there's no

evidence of awareness of Gonzalez's protected activity—shared three pieces of

immaterially inaccurate information with Sneath.  There's nothing here that would permit

a reasonable jury to find that this was retaliatory, let alone that there was a causal link

with Gonzalez's failure to get the job.  The EEOC is entitled to summary judgment on

Gonzalez's claim of retaliation.

**B.     Failure to accommodate**

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a

disability . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination . . . under

any program or activity conducted by any Executive agency. . . ."  29 U.S.C. § 794(a).

Claims under the Rehabilitation Act are generally analyzed under the same standards

applicable to claims brought under Title I of the Americans with Disabilities Act.  *See id*.

§ 794(d); *Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013).  To prevail on

a failure-to-accommodate claim under the Rehabilitation Act, Gonzalez must show that

(1) she is a qualified individual with a disability; (2) her employer was aware of her

disability; and (3) her employer failed to reasonably accommodate her disability.

*Brumfield*, 735 F.3d at 631.  Gonzalez's primary request was to work from home when

her migraines, vertigo, and depression were beyond her control.  In the alternative, she

requested intermittent leave pursuant to the Family and Medical Leave Act.

The EEOC does not dispute that it was aware of Gonzalez's claimed disability.  It

15

contends, however, that Gonzalez is not a "qualified individual" covered by the Act. Specifically, the EEOC argues that Gonzalez's inability to perform an essential function of her position—i.e., consistently reporting to work—with or without an accommodation precludes her from being considered a qualified individual under the Act.  A court may consider an employer's judgment in determining the essential functions of a position. *See* 42 U.S.C. § 12111(8).  Case law in this circuit also supports the EEOC's contention that consistent attendance is an essential function and that Gonzalez's inability to perform this function thus precludes her from being considered a "qualified individual."  *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814 (7th Cir. 2015) (plaintiff was not a qualified individual due to poor attendance); *see also EEOC v. Yellow Freight System*, 253 F.3d 943, 948 (7th Cir. 2001) ("the ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability.").  It's also possible that Gonzalez's secondary request to take intermittent leave, if granted, might be a further basis to consider her as not "qualified." *Whitaker v. Wisconsin Dep't of Health Servs.*, 849 F.3d 681, 685 (7th Cir. 2017) (employee was not "otherwise qualified" because of her repeated requests for leave and her failure to show that additional leave would enable her to resume the essential function of regular attendance); *see also Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th Cir. 1998) (indefinite leave not a form of reasonable accommodation).

Gonzalez argues in response that she is a qualified individual because in-person attendance was not required to perform the essential functions of her role.  Because a reasonable accommodation can, under the statute, render a person "qualified," *see* 29 U.S.C. § 794(a), this point merges with Gonzalez's contention that the EEOC failed to

accommodate her disability.  The Court therefore jumps ahead to that issue.

If an employee is a qualified individual, the ADA requires an employer to work with the employee to come up with a reasonable accommodation upon learning of the need for one.  *Beck v. Univ. of Wis. Bd. Of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).  Gonzalez argues that the EEOC failed to engage in this ADA-mandated interactive process.  Regarding the request to take intermittent FMLA leave, the EEOC contends that the ADA does not require it to allow Gonzalez to take such leave as an accommodation, as outlined the paragraph above.  With respect to the request to work from home, the agency argues that it cannot be held liable for failing to explore the feasibility of an accommodation for Gonzalez when she herself doubted its effectiveness.  This brings us to the question of whether teleworking, if offered by the EEOC, would have allowed Gonzalez to perform her job and reduce her absences to an acceptable level.

Gonzalez's testimony on this issue has been conflicting.  At certain points she testified that teleworking would have allowed her to fulfill her job duties, most notably, reporting to work.  At other points, she testified that she was not sure if she would be able to work even with an accommodation.  The Seventh Circuit has stated that:

> [T]he failure to engage in the interactive process required by the ADA . . . is actionable only if it prevents identification of an appropriate accommodation for a qualified individual.  Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation.

*Basden v. Pro. Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013); *see also Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 292-93 (7th Cir. 2015) (an employee cannot prevail on her ADA claim even if the employer refused to interact with her if no

17

reasonable accommodation was available that would enable her to work). Based on Gonzalez's testimony, there may be some periods during which she would not have been able to telework given the nature of her disability. But it is not clear from the record that the duration of such absences would be disqualifying. And the Court does not consider the testimony cited by the EEOC as amounting to a binding admission that no accommodation would work. The Court concludes that there are genuine factual disputes that preclude summary judgment in the EEOC's favor regarding whether Gonzalez would have been able to perform as an IIR with an accommodation.

The EEOC further argues that no reasonable jury could find that it failed to reasonably accommodate Gonzalez because she did not request to work from home until ten days before her probationary period was slated to end, which, the EEOC contends, was not enough time to implement that accommodation. More specifically, Bowman stated in her affidavit that ten days would not have been enough time for the EEOC to make special equipment and computer systems used by IIRs available at Gonzalez's home. That falls short, however, of a not-reasonably-disputable fact that entitles the EEOC to summary judgment. The Court also notes that a reasonable jury might well conclude that the EEOC was on notice of the need for an accommodation of this sort before Gonzalez specifically asked for it. The EEOC is not entitled to summary judgement on Gonzalez's failure to accommodate claim.

## Conclusion

For the foregoing reasons, the Court grants summary judgment in favor of the defendants on counts 1 and 4 of plaintiff's complaint but denies defendant's motion for summary judgment [dkt. no. 78] on counts 2 and 3, plaintiff's Rehabilitation Act claims.

The case is set for a telephonic status hearing on September 30, 2022 at 9:15 a.m. to set a schedule for further proceedings. The following call-in number will be used: 888-684-8852; access code 746-1053.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 23, 2022

19